## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

### CASE NO.

MSPA CLAIMS 1, LLC, a Florida limited
liability company, as assignee of Florida
Healthcare Plus, on behalf of itself and all
other similarly situated Medicare Advantage
Organizations in the State of Florida,

       Plaintiff,                      **CLASS ACTION**

v.

REGIONAL MEDICAL CENTER
BAYONET POINT VOLUNTEERS
ASSOCIATION, INC., a Florida Profit
Corporation,

       Defendant.

_____/

### CLASS ACTION COMPLAINT FOR DAMAGES

Plaintiff, MSPA Claims 1, LLC ("Plaintiff" or "MSPA"), on behalf of itself and all other

similarly-situated Medicare Advantage Organizations or its assignees operating in Florida, hereby

brings this Class Action Complaint ("Complaint") against Defendant, Regional Medical Center

Bayonet Point Volunteer Association, Inc. ("Defendant" or "Regional Medical Center"), and states

as follows:

### I.      NATURE OF THE ACTION

MSPA brings this class action against Regional Medical Center's for their systematic

failure to fulfill their statutorily-mandated duty to reimburse Medicare Advantage Organizations

("MAOs") when Regional Medical Center received dual payment from a primary payer and an

MAO for the same medical bill(s). MSPA and the putative class members ("Class Members") were

billed and paid for medical items and services provided to Medicare beneficiaries ("Medicare Beneficiaries") enrolled in Medicare Advantage ("MA") plans at Defendant's hospital or medical center. Regional Medical Center billed and received payment from the Class Members for medical items and services despite the existence of a primary payer that provided concurrent insurance coverage and that was primarily responsible for Medicare Beneficiaries' medical expenses. Plaintiff, as assignee of MAOs' direct rights of recovery, subrogation rights, third party beneficiary rights and/or recovery and reimbursement rights, seeks reimbursement for amounts paid to Regional Medical Center in accordance with the Medicare Secondary Payer ("MSP") law and for which Regional Medical Center had also billed a primary payer for identical medical items and services rendered to enrollees.

## II.   JURISDICTION, PARTIES, AND VENUE

1.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question).

2.      MSPA is a limited liability company duly organized, validly existing, and in good standing under the laws of Florida, with its principal place of business in Miami-Dade County, Florida.

3.      At all material times related to the events set forth in this Complaint, FHCP and the purported class members contracted with CMS to administer Medicare benefits for Medicare beneficiaries who elect to enroll in Medicare Advantage ("MA" or "Medicare Part C").  As such, FHCP is an MAO.

4.      On April 15, 2014, FHCP irrevocably assigned all rights to recover conditional payments made on behalf of its enrollees to La Ley Recovery Systems, Inc., ("La Ley Recovery"). The assignment from FHCP to La Ley ("FHCP Assignment") is attached hereto as Exhibit A, and expressly provides:

> [b]y way of this agreement, [FHCP] appoints, directs, and otherwise **assigns** all of [FHCP's] rights as it pertains to the rights pursuant to any plan, State or Federal statute whatsoever directly and/or indirectly for any its members and/or plan participants.

[Exhibit A, *FHCP Assignment § 1.1* (emphasis added)].

5.      The agreement authorized La Ley Recovery to assign the agreement to subsequent entities, so long as that assignment was approved. [Exhibit B, § 1.2]. La Ley Recovery[1] assigned the agreement to Plaintiff. [Exhibit B, *La Ley-MSPA Assignment*]. That assignment agreement provides as follows:

> [La Ley Recovery] hereby irrevocably assigns, transfers, conveys, sets over, and delivers to [Plaintiff] or its assigns any and all of [La Ley Recovery]'s rights, title, ownership and interest in and to all rights and entitlements, that [La Ley Recovery] has, may have had, or has asserted against third parties arising from or relating to the Claims.

[Exhibit B, *La Ley Recovery-MSPA Assignment Agreement § 1*].

6.      Following that assignment, FHCP approved any subsequent assignment from La Ley Recovery to any then-existing or future MSP Company, which includes Plaintiff.

7.      La Ley Recovery's assignment to MSPA was subsequently approved by FHCP's receiver through a settlement agreement ("Settlement Agreement") between FHCP, MSP Recovery LLC, MSP Recovery Services, LLC, and MSPA Claims 1, LLC, La Ley Recovery Systems Inc., and La Ley Recovery Systems (collectively referred to as the "MSP Companies"). A copy of the Settlement Agreement is attached as Exhibit C. In the Settlement Agreement, FHCP's receiver acknowledged and agreed to the terms and conditions of the FHCP-La Ley Recovery Assignment Agreement. [Exhibit C, Recitals, § 2(a)].

---

[1] Prior to the consummation of the La Ley Recovery-MSPA Assignment Agreement, FHCP approved Plaintiff as assignee.

8.    On June 14, 2016, the Leon County Circuit Court approved the terms of the Settlement Agreement, specifically finding "that the Settlement Agreement was negotiated in good faith and is in the best interest of Florida Healthcare Plus, Inc.," and retained jurisdiction to enforce the terms of the Settlement Agreement. [Exhibit D, *In Re: The Receivership of Florida Healthcare Plus, Inc.*, Case No. 2014 CA 2762, slip op., (Fla. 2d Cir. Ct. June 14, 2016)].

9.    Therefore, prior to the filing of this suit, MSPA maintained the requisite standing to file suit.

10.    Accordingly, MSPA possesses all of FHCP's subrogation rights to pursue and recover all medical claims, bills, and expenses FHCP provided on behalf of its MA enrollee from and against any liable primary payer, including Defendant, pursuant to the rights transferred from FHCP.

11.    Regional Medical Center is a Florida Profit Corporation organized to conduct business in the state of Florida with a registered agent and address of: Rudisill, Joe, COO, 14000 Fivay Road, Hudson, FL 34667.

12.    Venue is proper under 28 U.S.C. § 1391 in the United States District Court for the Middle District of Florida because the defendant resides in this judicial district.

13.    Plaintiff complied with all conditions precedent prior to the filing of this suit.

### III.    LEGAL BACKGROUND

14.    Medicare is a system of federally funded health insurance for people 65 and older, certain disabled persons, and persons with End Stage Renal Disease. Congress enacted the Medicare Program as Title XVIII of the Social Security Act ("Medicare Act"). 42 U.S.C. § 1395, *et seq.* Medicare is a complex federal program that provides health benefits to over 53 million

Americans in 2014 with total expenditures of $613.3 billion.[2] This suit challenges practices that drain money from the Medicare Trust Funds and increase the costs borne by elderly and disabled beneficiaries who enroll in MA plans.

## A.    The Medicare Act

15.    Subchapter XVIII of the Social Security Act – commonly called the Medicare Act – is divided into five "Parts."

16.    Part A provides hospital and certain other facility benefits. *See* 42 U.S.C. §§ 1395c to 1395i-5. Part B provides medical benefits, and although heavily subsidized by the federal government, is a voluntary program that requires a small premium from the beneficiary. *See* 42 U.S.C. §§ 1395j to 1395w-4. Parts A and B are often collectively referred to as the "original Medicare fee-for-service program option."

17.    Medicare Part C creates an alternative option for Medicare benefits provided by private contractors. *See* 42 U.S.C. §§ 1395w-21 to 1395w-29. Congress enacted Medicare Part C to "enable the Medicare program to utilize innovations that have helped the private market contain costs and expand health care delivery options." H.R. Rep. No. 105-217, at 585 (1997) (Conf. Rep.). Congress initially called this program "Medicare + Choice." S*ee* Balanced Budget Act of 1997, Pub. L. No. 105-33, Title IV, §§ 4001-4006, 111 Stat. 251, 275-334 (Aug. 5, 1997). In 2003, Congress amended certain provisions of the program and renamed it "Medicare Advantage." S*ee* Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"), Pub. L. No. 108-173, Title II, §§ 201-241, 117 Stat. at 2176-221.

---

[2] *See* 2015 Annual Report of the Boards of Trustees of the Federal Hospital Insurance and Federal Supplementary Medical Insurance Trust Funds, p. 7.

18.    Medicare Part D is the voluntary prescription drug benefit and was added in 2003. *See* Title I, §§ 101-111, 117 Stat. 2066, 2071-176 (Dec. 8, 2003) (codified at 42 U.S.C. §§ 1395w-101 to 1395w-152).

19.    The final "Part" of Title XVIII is Medicare Part E, which contains definitions and general provisions applicable to the entire Medicare program. *See* 42 U.S.C. §§ 1395x – 1395y. The Medicare Secondary Payer law, 42 U.S.C. § 1395y(b), is codified in Part E.

**B.    The Medicare Advantage (Medicare Part C) Program**

20.    The Medicare Act guarantees eligible beneficiaries the right to elect to receive Medicare benefits either through the original Medicare fee-for-service option or through a MA plan. *See* 42 U.S.C. § 1395w-21(a).

21.    The MA program is a federal program, operated under federal rules, funded by federal dollars.

22.    The funds for MA benefits come from the Medicare Trust Funds. *See* 42 U.S.C. § 1395w-23(f). The Medicare Trust Funds expended approximately $145.6 billion to provide Medicare benefits through the MA program in 2013.[3]

23.    The Conference Committee which finalized the legislation that became Medicare Part C intended that both the original Medicare fee-for-service option and the MA option would be regulated by the Federal government which would "alone set legislative requirements regarding reimbursement, covered providers, covered benefits and services, and mechanisms for resolving coverage disputes." Balanced Budget Act of 1997, P.L. 105-33, H.R. Conf. Rep. 105-217 (July

---

[3] 2015 Annual Report of the Boards of Trustees of the Federal Hospital Insurance and Federal Supplementary Medical Insurance Trust Funds, Table IV.C.2 (HI and SMI combined), p. 156.

30, 1997). The conferees believed that the MA program would "eventually eclipse original fee for service Medicare as the predominant form of enrollment under the Medicare program." *Id.*

**C.    MAOs and the Medicare Secondary Payer Law**

24.    In 1980, in response to skyrocketing costs, Congress began enacting the provisions that now comprise the Medicare Secondary Payer law, 42 U.S.C. § 1395y(b) ("MSP Law"). The primary intent underlying the MSP Law is to shift the financial burden of health care from the Medicare program to private insurers and thereby lower the cost of the Medicare program.

25.    The terms of the MSP Law makes clear that it is applicable to all payments "under this Subchapter," which includes payments made by MAOs under Part C of the Medicare Act. 42 U.S.C. § 1395y(b)(2)(A).

26.    Moreover, Medicare Part C expressly incorporates the MSP Law into the MA program.  It authorizes an MAO to charge a primary plan or an individual that has been paid by a primary plan "under circumstances in which payment under this title is made secondary pursuant to" the MSP Law. 42 U.S.C. §1395w-22(a)(4). In doing so, Congress expressed its understanding and intent that the MSP Law applies to Medicare Part C.

27.    The MSP Law creates a federal coordination of benefits framework, in which worker's compensation, liability insurance, and no fault insurance are primary, and Medicare benefits are secondary. *See* 42 U.S.C. § 1395y(b)(2).

28.    As with any system of coordination of benefits, the MSP Law involves both avoidance and recovery. Optimally, when items and services are covered by both a primary plan and by Medicare benefits, the providers submit their charges to the primary payer, and Medicare ***avoids*** the expense of paying those charges. Alternatively, when Medicare makes a payment for

medical services that have a primary payer, regardless of the reason, Medicare may seek to **_recover_** those payments. *See* 42 U.S.C. § 1395y(b)(2); § 1395y(b)(3)(A).

29.    Because the MA program is another vehicle through which Medicare beneficiaries may receive Medicare benefits, the same MSP rules apply. *See* CMS, *Medicare Managed Care Manual*, Chap. 4, § 130.3 (Rev. 107, 06-22-12) ("In the case of … no-fault [insurance], Medicare makes conditional payments if the other insurance does not pay promptly. These conditional payments are subject to recovery when and if the other insurance does make payment.").

30.    An MAO "will exercise the same rights to recover from a primary plan, entity or individual that the Secretary exercises under the MSP regulations." 42 C.F.R. § 422.108(f). An entity that receives payment from a primary plan shall therefore be required to reimburse an MAO for Medicare payments.  *Id.*

31.    The MSP Law states unequivocally that a primary plan, and a**n entity that receives from a primary plan**, shall reimburse Medicare for any payment made by Medicare with respect to an item or service "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service."  42 U.S.C.  § 1395y(b)(2)(B)(ii); *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1358 (11th Cir. 2016); *Brown v. Thompson*, 374 F.3d 253, 258 (4th Cir. 2004).

32.    The enforcement provision of the MSP Law authorizes a private cause of action to recover primary payments or reimbursements owed under the MSP Law. 42 U.S.C. § 1395y(b)(3)(A). The provision further provides that damages "shall be in an amount double the amount otherwise provided."  *Id.*; *see MSP Recovery*, 835 F.3d at 1358.

33.    MAOs may charge interest if reimbursement is not made before the expiration of the 60-day period.  *See* 42 C.F.R. §§ 411.24(m), 422.108(f).

**D.     Plaintiffs' Use of EDI to Analyze Claims Data and Identify Reimbursement Claims Under the MSP Act.**

34.     Using a software system (the "MSP System"), designed and developed by Plaintiff, Plaintiff can capture, compile, synthesize, and funnel large amounts of data to identify claims class-wide. The MSP System captures data from different sources to identify the Class Member enrollees' medical expenses incurred as a result of an accident and which should have been paid for by a primary payer. The System can also identify the amounts owed, by using EDI, the MAO's data, and data acquired from outside sources, like the Department of Motor Vehicles, and CMS.

35.     Plaintiffs merge third party data with the information available on the MSP System to discover and identify a Medicare eligible person for whom primary medical payments should have been made, along with any information stored as to potential class members.

36.     The MSP System utilizes ICD-9 or ICD-10 CM medical diagnosis codes and DRGs, ICD-9, ICD-10 PCS, HCPCS, or CPT procedure codes to identify and obtain any information regarding an Enrollee's claim, such as the type of injury suffered and the circumstances that caused the injury.

## IV.     REPRESENTATIVE FACTUAL ALLEGATIONS

**Defendant Systematically Failed to Appropriately Reimburse
After Receiving Dual Payment From Primary and Secondary Plans.**

37.     Numerous Medicare beneficiaries, under Part C, were members of MAOs who have assigned their rights to MSPA ("Medicare Beneficiaries"). These Medicare Beneficiaries received medical items and services at Regional Medical Center for medical treatment.

38.     In addition to being covered by an MA plan administered by an MAO, the Medicare Beneficiaries were also covered at the time of the accident by a primary payer.

39.    Regional Medical Center billed both the primary payer and the Class Members for the identical items and services provided to the Medicare Beneficiaries.

40.    Accordingly, Regional Medical Center **received payment from both** the primary payer and FHCP for the same medical items and services provided to the Medicare Beneficiaries.

41.    Regional Medical Center was required to reimburse the Class Members within sixty days of receipt of dual payment. *See* 42 C.F.R. § 411.24(h). However, they failed to do so in each instance.

42.    Defendants' failure to reimburse Plaintiff within the sixty day window entitles Plaintiff to double damages plus accrued interest pursuant to 42 U.S.C. § 1395y(b)(3)(A) and 42 C.F.R. § 411.24(h).

43.    Defendant was obligated and had an affirmative duty to provide "appropriate reimbursement" to FHCP once it received dual payment from the primary payer for the same items and services. *See Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239-1240 (11th Cir. 2016); 42 C.F.R. §§ 489.20(f)-(h), 411.24(h).

## V.    REPRESENTATIVE CLAIM

44.    MSPA alleges the following representative claim involving payments for medical services that Regional Medical Center double billed MSPA and the primary payer and retained both payments.

45.    The representative MAO is Florida Healthcare Plus. The representative Medicare Beneficiary is F.R. ("Enrollee").[4]

---

[4] Pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and in order to protect Plaintiffs' proprietary data, the name of Medicare Beneficiary, as well as the corresponding MAO, Full Risk Payer and/or their assignee(s), shall be provided to Regional Medical Center upon execution of a qualified protective order.

46.     Regional Medical Center billed both Enrollee's no-fault PIP insurer, Infinity Auto Insurance Company ("Infinity") and FHCP for the same identical items and services provided to Enrollee.

47.     Infinity had a contractual obligation under their no fault policies with the F.R. to pay for their accident-related expenses.

48.     On August 6, 2012, Infinity, as a primary payer, paid $5,000.00 to Regional Medical Center for medical items and services provided to Enrollee.

49.     On May 12, 2014, FHCP, as a secondary payer, paid $64,251.85 to Regional Medical Center for the same medical items services Infinity paid on behalf of Enrollee.

50.     Regional Medical Center received payment from both Infinity and FHCP for the same medical items services provided to Enrollee.

51.     However, Regional Medical Center never appropriately reimbursed FHCP within sixty day of the receipt of the secondary payment.

52.     The factual allegations regarding F.R.'s claims were identified on October 3, 2017 by Plaintiff using various databases, medical bills, claims data, and Infinity's PIP payout sheets.

53.     Full details of this claim, i.e., specific payments, coverage determinations, etc., are in Defendant's possession and will be located and assessed through the process of discovery. Defendant was and is in the best position to know which payments have been made by Plaintiff's assignors because the MAOs and its in-network providers frequently will not know which of its payments has been subsequently duplicated by an insurer. *See U.S. v. Baxter Int'l, Inc.*, 345 F.3d 866, 885 (11th Cir. 2003) (the MSP Act "is built on the recognition that **Medicare frequently will <u>not</u> know** which of its payments has been subsequently duplicated by an insurer. . ."). Defendant has failed to provide forthcoming data to provide the full extent of its MSP obligations.

## VI.    CLASS REPRESENTATION ALLEGATIONS

### FEDERAL RULE OF CIVIL PROCEDURE 23 REQUIREMENTS

54.    MSPA brings this suit as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of the Class of similarly situated Florida MAOs or their assignees.

55.    MSPA seeks to certify this case as a class action and seeks monetary damages against Regional Medical Center on behalf of the Class.

56.    The Class Members that MSPA seeks to represent are defined as follows:

any and all Florida MAOs (or its assignees) that: (1) made secondary payments on behalf of its enrollees for Regional Medical Center's medical care and treatment services; (2) were not appropriately reimbursed by Bayfront within sixty days of receipt of payment, after Regional Medical Center billed and received duplicate payment from a primary payer for the same medical care and treatment services; and (3) failed to pay the accrued interest after the expiration sixty days of receipt of duplicate payment.

57.    Federal Rule of Civil Procedure 23(a) states that a plaintiff may sue as a representative party on behalf of the class, if it establishes that:

  a.   the class is so numerous that joinder of all members is impracticable;

  b.   there are questions of law or fact common to the class;

  c.   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

  d.   the representative parties will fairly and adequately protect the interests of the class.

**A.    Numerosity**

58.    The Class is so numerous that joinder of all members is impracticable.

59.    Upon information and belief, the Class is comprised of approximately thirty-seven (37) Florida MAOs or their assignees.

60.     The Class Members each may have one or more enrollees in their MA plans for whom medical payments were made and for which Regional Medical Center also received primary payment from a primary plan for the same medical items and services.  Regional Medical Center failed provide appropriate reimbursement under the MSP Law.

**B.      Commonality**

61.     MSPA and the Class Members have claims that raise common questions of law and/or fact.

62.     This is an action whereby the MSPA and Class Members have claims that are based on the same theory of recovery (*i.e.*, that they are entitled reimbursement from Regional Medical Center for payments made on behalf of their enrollees).

63.     The Class Members, including MSPA, possesses the same rights to obtain recovery of its payments under the MSP Law. *See* 42 U.S.C. §§ 1395w-22(a)(4), 1395y(b)(2), 1395y(b)(3)(A); 42 C.F.R. §§ 422.108(f), 489.20(f)-(h), 411.24(h).

64.     MSPA's claim arises from the same practice or course of conduct that gave rise to the Class Members' claims.  Specifically, the claims are predicated on Regional Medical Center's routine practice of billing and obtaining payment from two different payers for the same medical services.  MSPA and the Class Members: (1) made secondary payments on behalf of its enrollees for Regional Medical Center's medical care and treatment services; and (2) were not reimbursed by Regional Medical Center within sixty days of receipt of payment, after Regional Medical Center billed and received duplicate payment from a primary payer for the same medical care and treatment services.

65.     The harm suffered by MSPA was caused by the same common source, *i.e.*, Regional Medical Center's failure to reimburse MSPA and the Class Members for its secondary payments

for Regional Medical Center's medical care and treatment services, after Regional Medical Center billed and received duplicate payment from a primary payer for the same medical care and treatment services.

66.     MSPA's claims raise questions of law and/or fact that are common to the questions of law and/or fact that will be raised by the Class Members, including, but not limited to, whether:

    a.   under the MSP Law, payments made by MSPA (for the benefit of Enrollee and for other MA plan enrollees) and the Class Members are secondary;

    b.   Regional Medical Center billed Enrollee's primary payer and MSPA and the Class Members for same items and services provided;

    c.   Regional Medical Center received payment from the primary payer;

    d.   Regional Medical Center additionally received payment from a secondary payer irrespective of who paid first;

    e.   Regional Medical Center failed to reimburse MSPA for the payment made within sixty days of receipt of secondary payment; and

    f.   MSPA and the Class Members are entitled to double damages pursuant to 42 U.S.C. § 1395y(b)(3)(A) when Regional Medical Center, as an entity that received primary payment under the MSP Law, fails to provide appropriate reimbursement for secondary payments made by the MAOs;

67.     The monetary damages caused to MSPA (as assignee of MAOs), as well as each member of the Class, were directly and proximately caused by the acts of Regional Medical Center or by those under Regional Medical Center's direction, control, and/or supervision.

**C.     Typicality**

68.     As the assignee of FHCP, MSPA's claims relating to Enrollee (and relating to its other MA plan enrollees) are typical of the claims of the members of the Class that MSPA will represent.  All members of the Class have been damaged in the same manner. MSPA's claims have the same essential characteristics as those of the proposed Class, and MSPA's claims arise from a similar course of conduct and share the same legal theory. Accordingly, MSPA as the class

representative possesses the same interests and suffered the same injury as the other members of the Class Members, such that there is a sufficient nexus between MSPA's claims and the Class Members.

69.     MSPA's claims are typical for the Class, as MSPA and the Class are entitled to relief owing to Regional Medical Center's failure to reimburse the Class members (or their assignees), for payments made for the cost of their enrollees' medical items and services provided.

70.     MSPA seeks to recover the payments Regional Medical Center should have reimbursed to MSPA and the Class for its failure to appropriately reimburse MSPA and the Class when it received duplicate payment from each enrollee's primary plan and the Class.

71.     Regional Medical Center's bad acts and defenses are similar with respect to MSPA and the other members of the Class.

**D.    Adequacy of Representation**

72.     Plaintiff and Plaintiff's Counsel can fairly and adequately protect and represent the interests of each member of the Class.

i.    <u>Adequate Class Counsel</u>

73.     Plaintiff's Counsel have the experience, resources, and commitment to prosecute this case vigorously to a successful resolution.

74.     To prosecute this case, Plaintiff has retained John H. Ruiz, Frank C. Quesada, and MSP Recovery Law Firm.  John H. Ruiz has served as lead class counsel for numerous class action cases presiding in both State and Federal Court. In addition to being involved in these types of cases, John H. Ruiz handles other complex litigation matters as well as trials. John H. Ruiz, Frank C. Quesada, and MSP Recovery Law Firm have the experience and financial ability to prosecute this case. John H. Ruiz, Frank C. Quesada, and MSP Recovery Law Firm have spent time and

resources to identify and investigate the potential claims in this action under the MSP Law. They are knowledgeable regarding the MSP Law and its corresponding regulations, so much so that they have published articles, spoken at conferences throughout the country and participated, argued and advanced precedent on the MSP Law in the Eleventh Circuit Court of Appeals. *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351 (11th Cir. 2016) (appellant and prevailing party); *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229 (11th Cir. Fla. 2016) (amicus).

      ii.   <u>Adequate Class Representative</u>

75.   MSPA is a member of the class as defined above. MSPA is committed to the active and vigorous prosecution of this action, and has retained competent counsel experienced in litigation of this nature. There is no hostility of interests between MSPA and the other members of the Class. MSPA anticipates no difficulty in the management of this litigation as a class action. MSPA has no claims that are antagonistic to the claims of the Class members and/or claims it seeks to represent.

**FEDERAL RULE OF CIVIL PROCEDURE 23(b) REQUIREMENTS**

76.   In addition to satisfying Rule 23(a), MSPA must establish at least one of three subsections within Federal Rules of Civil Procedure 23(b):

    1.   prosecuting separate actions by or against individual class members would create a risk of:

        A.   inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

        B.   adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

    2.   the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole; or

3.    the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include.

A.    the class members' interests in individually controlling the prosecution or defense of separate actions;

B.    the extent and nature of any litigation concerning the controversy already begun by or against class members;

C.    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

D.    the likely difficulties in managing a class action.

77.    This action is maintainable under Federal Rule of Civil Procedure 23(b)(3).

**Rule 23(b)(3)**

78.    The Class is properly certifiable under Rule 23(b)(3) because questions of law and fact common to the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this case.

A.    <u>Predominance</u>

79.    In this matter, common issues of law and fact concerning liability and causation involved in the action before this Court predominate over issues of individual concern.

80.    The individual cases arise out of the same nucleus of operative facts; that Regional Medical Center uniformly: (1) billed both an enrollee's primary plan and MAO; (2) received payment from both the primary plan and MAO for the same medical items and services; and (3) failed to reimburse the MAO within sixty days of receipt of the duplicate payment.

81.    MSPA maintains a reasonable methodology for generalized proof of class-wide impact using the MSP System designed and developed by MSPA and its counsel.  The MSP System captures, compiles, synthesizes, and funnels large amounts of data taken from MAOs,

CMS, the State of Florida, industry recognized sources, and Regional Medical Center's submissions to industry recognized sources in order to identify claims class-wide.

82.    Locating members of the Class would be relatively simple, since CMS maintains records of all MAOs, and providing notice to such entities would could be accomplished by direct communication.

B.    Superiority

83.    The Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because a class action in this context is superior. Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Class. Defendant, whether deliberately or not, failed to reimburse Class Members and those organizations that assigned their recovery rights to Plaintiff, thus depriving Plaintiff, as assignee of the right to recovery, and Class Members of their statutory right to payment and reimbursement.

84.    It is the custom and practice of the CMS and primary plans to maintain records in a detailed electronic format. Based on these practices, Plaintiff maintains a reasonable methodology for generalized proof of Class-wide impact, using the MSP System designed and developed by Plaintiff and its counsel. The MSP System captures, compiles, synthesizes and analyzes large amounts of data in order to identify claims for reimbursement of conditional payments. This case will not present manageability problems as compared to non-electronic data driven class actions. There is no need for a fact-specific individual analysis of intent or causation, and damages will be calculated based upon the total fee-for-service amounts associated with the payments made on behalf of Enrollees. Plaintiff is capable of using the MSP System to identify and quantify Class Members' claims, as it has done for its own claims. Two other courts have recognized the MSP System as a viable method to prove damages in substantially similar cases

wherein the plaintiff, like in this case, asserted an MSP private cause of action breach of contract causes of action. *MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.*, 2017 WL 477124 (Fla. 11th Cir. Ct. 2017); *MSPA Claims 1, LLC v. IDS Property Cas. Ins. Co.*, Case No. 2015-27940 CA-01 (Fla. 11th Cir. Ct. 2017).

85.    Proceeding with a damages class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated assignors to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

86.    Administering the proposed Damages Class will be relatively simple. MSPA can either cross-reference (1) its claims data with Defendant's medical bills to verify that Defendant received payment from a primary plan and a secondary plan or (2) its claims data with the PIP payout sheet from the primary plan that also made payment to Defendant. Indeed, two Florida state classes were recently certified in *MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.*, 2017 WL 477124 (Fla. 11th Cir. Ct. 2017) and *MSPA Claims 1, LLC v. IDS Property Cas. Ins. Co.*, Case No. 15-27940-CA-21 (Fla. 11th Cir. Ct. 2017) using a similar methodology.

## VII.   CAUSES OF ACTION

### COUNT I
### PRIVATE CAUSE OF ACTION UNDER 42 U.S.C. § 1395y(B)(3)(A)

Plaintiff hereby incorporates by reference the allegations of paragraphs one through eighty-six above as if fully set forth herein, and further alleges:

87.    Regional Medical Center billed both a primary payer and the Class Members for items and services provided to the Medicare Beneficiaries.

88.    The Class Members paid for the medical services and treatment rendered to the Medicare Beneficiaries.

89.    Despite the existence of a responsible primary payer, as defined in 42 U.S.C. §§ 1395y(b)(2) and 1395w-22(a)(4), with respect to the medical expenses incurred by the Medicare Beneficiaries, the Class Members were nonetheless billed and paid for Medicare Beneficiaries' medical expenses.

90.    Despite having billed the Class Members, Regional Medical Center also billed and collected payment from a primary payer for the medical treatment rendered to the Medicare Beneficiaries.  Hence, Regional Medical Center billed two parties for the same services.

91.    Upon Regional Medical Center's receipt of payment from the primary payer, Defendant became obligated to reimburse the MSPA and the Class Members, within sixty days pursuant to 42 C.F.R. § 411.24(h).

92.    Regional Medical Center is an entity that received payment from a primary payer, and required to reimburse the MSPA and the Class Members pursuant to 42 U.S.C. § 1395y(b)(2)(B)(ii) and 42 C.F.R. §§ 411.24(g), 422.108.

93.    Regional Medical Center failed to appropriately reimburse MSPA and the Class Members in accordance with 42 C.F.R. § 411.24(h).

94.    Therefore, Regional Medical Center failed to make appropriate reimbursements to MSPA and the Class Members for the items and services for which the Class Members made payments.

95.    Congress established a private cause of action under 42 U.S.C. § 1395y(b)(3)(A), permitting the recovery of double damages for a failure to make appropriate reimbursement in accordance with the MSP Law.

96.    Under the private cause of action established by 42 U.S.C. § 1395y(b)(3)(A), MSPA and the Class Members are entitled to recover an amount double the amount otherwise provided.

**WHEREFORE**, MSPA demands judgment for itself and the Class Members against Regional Medical Center for double damages, court costs, interests, and such other and further relief as this Court deems just and proper.

## COUNT II
## UNJUST ENRICHMENT

Plaintiff hereby incorporates by reference the allegations of paragraphs one through eighty-six above as if fully set forth herein, and further alleges:

97.    MSPA and the Class Members conferred a benefit upon Regional Medical Center by promptly paying for the medical services rendered to Medicare Beneficiaries.

98.    At all times material hereto, Regional Medical Center was aware of the benefit conferred by MSPA and the Class Members.

99.    In accepting payment by the primary payer and the Class Members, Regional Medical Center knowingly and voluntarily accepted the payment from both sources for the same services.

100.   Regional Medical Center failed to appropriately reimburse MSPA and the Class Members.

101.   Accordingly, it is unjust and inequitable for Regional Medical Center to keep monies which belongs to MSPA and the Class Members.

102.   MSPA and the Class Members are entitled to appropriate reimbursement.

**WHEREFORE**, MSPA demands judgment for itself and the Class Members against Regional Medical Center for damages, court costs, interest, and such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated:  August 28, 2018.

Respectfully submitted,

**MSP RECOVERY LAW FIRM**
5000 SW 75th Avenue, Suite 300
Miami, Florida 33155
Telephone: (305) 614-2222

By: */s/ Frank C. Quesada, Esq.*
Frank C. Quesada, Esq., Fla Bar No. 29411

Exhibit "A"

**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT,
IN AND FOR LEON COUNTY, FLORIDA**

In Re: The Receivership of

Case No.: 2014 CA 2762

FLORIDA HEALTHCARE PLUS, INC.

_____/

**NOTICE OF WITHDRAWAL OF RECEIVER'S PETITION TO ENJOIN LA LEY
RECOVERY SYSTEMS INC., FROM FURTHER COLLECTION ACTIVITIES ON
BEHALF OF FLORIDA HEALTH CARE PLUS, INC.**

**PLEASE TAKE NOTICE** that The Florida Department of Financial Services as Receiver

of Florida Health Care Plus, Inc. hereby withdraws its Petition for an Injunction against La Ley

Recovery Systems Inc., filed September 18, 2015.

**RESPECTFULLY SUBMITTED** on this the 20th day of June, 2016.

_____/S/_____

**E. BARCLAY CALE**
 Florida Bar No. 829056
 bcale@calelaw.com
**KEVIN M. FITZMAURICE**
 Florida Bar No. 782068
 kfitzmaurice@calelaw.com
BARCLAY CALE, P.A.
*Counsel for Receiver*
1200 Alfred I. duPont Building
169 East Flagler Street
Miami, Florida 33131
Telephone: 305-416-3611
Facsimile: 305-416-3612

**JAMILA G. GOODEN**
**Senior Attorney**
Florida Bar No. 46740
Jamila.Gooden@myfloridacfo.com

**YAMILE BENITEZ-TORVISO**
**Senior Attorney**
Florida Bar No. 151726
Yamile.Benitez-Torviso@myfloridacfo.com

Florida Department of Financial Services
Division of Rehabilitation and Liquidation
2020 Capital Circle S.E.
Suite 310
Tallahassee, Florida 32301
Telephone: (850) 413-3179

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served by electronic mail on this 20th day of June, 2016, to: John H. Ruiz, counsel for La Ley, at serve@lawofficeslaley.com, fquesada@msprecover.com.

By:_____/S/_____

    E. BARCLAY CALE

Exhibit "B"

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (the "Settlement Agreement") is made and entered into this 1st day of **June, 2016** by and between La Ley Recovery Systems Inc. ("LLRS"), La Ley Recovery Systems – FHCP, Inc. ("LLFHCP"), MSP Recovery LLC ("MSP"), MSP Recovery Services, LLC ("MSP Recovery"), and MSPA Claims 1, LLC ("MSPA") (LLRS, LLFHCP, MSP Recovery, MSP, and MSPA are collectively referred to herein as "La Ley"), on the one hand, and the Florida Department of Financial Services as Receiver of Florida Healthcare Plus, Inc. (the "Receiver"), on the other hand. La Ley and Receiver are each hereinafter referred to as a "Party" and collectively as the "Parties."

## RECITALS

**WHEREAS**, on April 15, 2014, La Ley entered into a Cost Recovery Agreement with Florida Healthcare Plus, Inc. ("FHCP") under which FHCP assigned all rights, title and interest held by FHCP to certain recoveries related to accidents or incidents recoverable pursuant to the Medicare Secondary Payer Act, the Medicaid Third Party Liability Act, and/or applicable Federal and State subrogation laws (the "Initial Agreement");

**WHEREAS**, On October 20, 2014, the Florida Department of Financial Services filed an Application for an Order Requiring FHCP to Show Cause Why It Should Not Be Placed in Receivership *In Re: The Receivership of Florida Healthcare Plus, Inc.* No. 2014-CA 2762 (Fla. Cir. Ct., Leon Cnty.) (the "Receivership Proceeding"); and

**WHEREAS**, on December 10, 2014, the Honorable George S. Reynolds, III entered an Order Appointing the Florida Department of Financial Services as Receiver of FHCP for Purposes of Immediate Rehabilitation and Automatic Liquidation Effective January 1, 2015, Injunction, and, Notice of Automatic Stay; and

**WHEREAS**, pursuant to the Liquidation Order and sections 631.111 and 631.141, Florida Statutes, the Department as Receiver is vested with title to all property, contracts, rights of action, and books and records of FHCP; and

**WHEREAS**, a dispute arose between the Receiver and La Ley regarding the respective rights of the Parties under the Initial Agreement; and

**WHEREAS**, the Parties desire to settle and resolve the dispute regarding the respective rights of the Parties under the Initial Agreement, modify the compensation provisions contemplated under the Initial Agreement, and provide for other terms and conditions as described in the term sheet entered into among the Parties (the "Term Sheet"); and

**WHEREAS**, La Ley, in conjunction with execution of the Term Sheet and in anticipation of execution of a separate and binding settlement agreement, deposited with Foley and Lardner, LLP ("Escrow Agent")

Deputy Receiver

## AGREEMENT

**NOW, THEREFORE,** in consideration of the foregoing premises and the mutual promises of the Parties set forth herein, and for other good and valuable consideration, the Parties hereby agree as follows:

1.      **Effective Date.** This Settlement Agreement shall become effective on the date on which all of the conditions precedent, set forth in Section 6 of this Settlement Agreement, have occurred (the "Effective Date").

2.      **Assignment of Claims and Recoveries.** Receiver acknowledges and agrees that the terms and conditions of the Initial Agreement, to the extent such terms and conditions do not conflict with the terms and conditions of this Settlement Agreement, shall remain in full force and effect from April 15, 2014 until the Effective Date of this Settlement Agreement.

a.      Receiver hereby agrees that Receiver shall not object to, or seek to terminate for any reason, the Initial Agreement, and expressly acknowledges and agrees that as of the execution of the Initial Agreement, all rights, title, and interest held by FHCP to recoveries, including any rights, title and interest assigned to FHCP pursuant to contractual agreements with FHCP members, related to accidents or incidents recoverable pursuant to the Medicare Secondary Payer Act, the Medicaid Third Party Liability Act, and/or any other applicable Federal or State subrogation laws, and all rights, title and interest to recover payments made by FHCP on behalf of FHCP members pursuant to various legal theories related to accidents or incidents recoverable pursuant to the Medicare Secondary Payer Act, the Medicaid Third Party Liability Act, and/or any other applicable Federal or State subrogation laws ("Assigned Claims") were and continue to be irrevocably assigned to La Ley.

b.      Notwithstanding any other legal rights to recover amounts pursuant to this Settlement Agreement and/or the Initial Agreement, the Parties agree that neither Party shall pursue recovery of any amount exceeding the amount actually paid by FHCP when such recovery would directly affect a Medicare and/or Medicaid beneficiary by reducing the recovery such beneficiary would obtain from a third party; provided, however, that in cases where a Medicare and/or Medicaid beneficiary's recoveries are not affected, La Ley shall continue to seek recovery of the amount billed or fee for service amounts, as permitted by applicable law. La Ley shall determine, in its own discretion, and utilizing good faith, whether the beneficiary's recoveries are affected in a particular instance. This restriction shall not apply, for example, to cases wherein a Medicare and/or Medicaid beneficiary has not made a claim as of the date that La Ley and/or its assignee commences its claims.

c.      Notwithstanding any other legal rights to recover amounts pursuant to this Settlement Agreement, the Initial Agreement, and/or a provision in any applicable medical provider agreement, and regardless of whether the payment amount received from a third party by a medical provider with whom FHCP had a provider agreement ("contracted provider") is greater than the amount FHCP would have been obligated to pay the contracted provider under the provider agreement, the Parties agree that, La Ley shall not seek to recover any amounts paid to the contracted provider unless the contracted provider

2 of 11

Deputy Receiver

received payment from a third party and received payment from FHCP for the same services rendered to a member.

    d.    Expressly excepted from La Ley's rights to recover under this Settlement Agreement are the following:

    i.    The right of FHCP or the Receiver to recoup overpayments made to a provider for a submitted claim or to recoup payment(s) from a provider for a submitted claim if it is discovered that FHCP erroneously (i) paid more than the maximum allowed for the type of services rendered or (2) paid the same claim multiple times. Notwithstanding the foregoing, La Ley's recovery rights are not affected by this provision to the extent that the basis of the recovery of these payments stems from the fact that the provider was paid by both FHCP and another payer.

    ii.    Risk Sharing receivables due and owing to FHCP or the Receiver pursuant to applicable provisions of contracts between FHCP and its providers.

    e.    Receiver shall provide or cause to be provided to La Ley and shall only be required to provide or cause to be provided to Lay Ley the following claims information with the understanding and acknowledgement of the Parties that the Receiver makes no warranties or representations as to the completeness or accuracy of the information, data, or records created, held, or produced by FHCP or its providers, whether contracted or otherwise, from which the following information will be amalgamated and produced:

    i.    An extract of FHCP claims data for claims with dates of service between January 1, 2012, through December 31, 2014. The data will include information for claims filed prior to liquidation that were contained in the TriZetto QNXT system and information for claims filed with the Receiver's third party administrator ("TPA") after liquidation. The data will be provided in a Structured Query Language ("SQL") database.

    (1)    The Receiver's TPA estimates that it will require a minimum of 20 hours of work at a rate of Fifty Dollars ($50) per hour to gather and produce the data.

    (2)    The Parties acknowledge that the Receiver's TPA will require a minimum of fourteen days to produce the data extract from the date a request for the data contemplated hereunder is made by the Receiver.

    (3)    La Ley agrees to pay all costs associated with the TPA's production of the data extract and the Parties acknowledge and agree that the Receiver will not authorize the release of the data extract until La Ley has paid the costs for the production of the data extract in full.

    (4)    The Parties agree to work with each other and with the TPA in good faith to effectuate the claims data extract contemplated hereunder.

3 of 11

Deputy Receiver

ii.    A list of FHCP's contracted providers and a specimen of the provisions of provider agreements relating to the recovery of payments by or from third parties (collectively the "Contracted Provider Documents") on the condition that La Ley agrees that it shall not use information gleaned from the Contracted Provider Documents for any purpose other than to determine the respective rights and responsibilities of FHCP and its contracted providers relative to Coordination of Benefits and provider compensation.

f.    Receiver shall forward all inquiries regarding subrogation and recovery of Assigned Claims to La Ley within fifteen (15) days of receiving such inquiries. La Ley acknowledges that the Receiver need not maintain any FHCP documents or records beyond the time specified in the retention schedule of the Division of Rehabilitation and Liquidation.

3.    **Settlement Payment.**

a.    In exchange for the consideration reflected in this Settlement Agreement, and in lieu of the compensation payable to FHCP under the Initial Agreement, La Ley shall pay Receiver ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (the "Settlement Payment").

b.    The Settlement Payment shall be made in two payments, in accordance with the following: (i) on the Effective Date, La Ley shall cause the Escrow Agent to pay Receiver, in accordance with Section 3(d) of this Settlement Agreement, ▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (the "Initial Settlement Payment."); and (ii) on the one (1) year anniversary of the Effective Date, La Ley shall pay Receiver ▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (the "Final Settlement Payment").

c.    As security for the Final Payment, contemporaneously with the execution of this Settlement Agreement, La Ley shall execute a promissory note, attached hereto as **Exhibit A**, in favor of Receiver in the principal amount of ▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉ (the "Promissory Note").

d.    The Initial Settlement Payment shall be made by wire transfer from Escrow Agent to Receiver pursuant to wire instructions provided separately by Receiver. The Final Settlement Payment shall be made by check payable to Receiver or by wire transfer to Receiver pursuant to wire instructions provided by Receiver.

4.    **Third Party Communications.**    The Parties hereby mutually agree that the language contained in **Exhibit B** attached hereto shall be used in any and all Third Party Communications. For purposes of this Section 4, "Third Party Communications" shall mean any communication between La Ley and a third party that references FHCP or former FHCP members, including, but not limited to, demand letters, document requests, court filings, and agreements with subcontractors, affiliates, and assignees. La Ley will not use, in Third Party Communications, language inconsistent with that contained in Exhibit B. If La Ley desires to amend the language contained in its Third Party Communications, it will provide proposed amended language to the Receiver for approval. The Receiver shall, within (15) fifteen days of receipt of such proposed

4 of 11

Deputy Receiver

amended language, approve such language or detail to La Ley in writing its objections to the proposed amended language.

5.    **Health Insurance Portability and Accountability Act of 1996 ("HIPAA").** La Ley's obligations under the Business Associate Agreement entered by and between La Ley and FHCP on April 15, 2014, remain in full force and effect. In addition to comply with the requirements of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), La Ley and Receiver shall execute the *Business Associate Agreement* which is attached hereto as **Exhibit C** and is incorporated herein by reference. La Ley shall agree to advise each employee of La Ley's HIPAA obligations and require each such employee to maintain those obligations by execution of a HIPAA compliant confidentiality statement.

6.    **Conditions Precedent.** This Settlement Agreement is subject to and conditioned upon the full satisfaction of the following conditions precedent

a.    The court in the Receivership Proceeding entering an order approving this Settlement Agreement; and

b.    The execution and delivery to Receiver of the Promissory Note in accordance with Section 3(c) of this Settlement Agreement.

7.    **Mutual Releases.**

a.    In exchange for the consideration set forth in this Settlement Agreement, the receipt and sufficiency of which is acknowledged, Receiver for itself and its agents, agencies, beneficiaries, servicers, sub-servicers, attorneys, predecessors, successors and assigns, agrees to fully and forever, release, discharge, and covenant not to sue La Ley, its affiliates and assignees, from and for any and all claims whatsoever, in law or in equity, the Receiver and/or FHCP now has, may have had, or may hereafter have against La Ley, whether known or unknown, suspected or unsuspected, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, arising out of, or by reason of any matter, cause, action, event, or omission or thing prior to the date of this Settlement Agreement that pertains in any way to the Assigned Claims, the Initial Agreement, or any claim or voidable transfer applicable to La Ley arising from chapter 631, Florida Statutes.

b.    In exchange for the consideration set forth in this Settlement Agreement, the receipt and sufficiency of which is acknowledged, La Ley, for itself and its agents, agencies, beneficiaries, servicers, sub-servicers, attorneys, predecessors, successors and assigns, agrees to fully and forever, release, discharge, and covenants not to sue Receiver, from and for any and all claims whatsoever, in law or in equity, La Ley now has, may have had, or may hereafter have against the Receiver, whether known or unknown, suspected or unsuspected, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, arising out of, or by reason of any matter, cause, action, event, or omission or thing prior to the date of this Settlement Agreement that pertains in any way to the Assigned Claims or the Initial Agreement.

8.    **Dismissal.** Within (3) three business days after the receipt of the Initial Settlement Payment, the Receiver shall withdraw its September 18, 2015 Petition to Enjoin La Ley Recovery

Deputy Receiver

Systems Inc., Its Affiliates, Assignees, Representatives, Agents, Subcontractors, and All Other Entities From Further Collection Activities on Behalf Of Florida Healthcare Plus, Inc.

9. **Express Waiver of Rights By the Parties.** Notwithstanding any statute or provision of the common law that provides that a release does not extend to claims that a releasor does not know or suspect to exist at the time of executing the release, the releases as set forth in Section 7 of this Settlement Agreement shall be deemed to constitute full releases in accordance with their terms. The Parties shall be deemed knowingly and voluntarily to have waived, to the fullest extent permitted by law, the provisions, rights, and benefits of any federal law or the law of any state or territory or common law that would in any way limit the application of the releases to known or suspected claims. The Parties acknowledge and agree that this waiver is an essential and material term of this Settlement Agreement and without such waiver the Settlement Agreement would not have been entered into.

10. **Execution and Court Approval.** Upon execution of this Settlement Agreement, the Receiver shall file a motion seeking authority to enter into this Settlement Agreement and to provide the Releases required herein.

11. **Representations and Warranties.**

a. The Parties represent and warrant that they have not assigned to any other person or entity any claims released pursuant to this Settlement Agreement; except to the extent allowed in Section 20 hereof. If, contrary to this representation and warranty, a Party assigns or has assigned such rights to any other person or entity, that Party shall defend, indemnify, and hold harmless the other Party with respect to any claim or action brought by any assignee of any interest assigned contrary to this representation and warranty.

b. Each Party to this Settlement Agreement acknowledges that this Settlement Agreement is made and executed by such Party's own free will and in accordance with such Party's own judgment and upon advice of counsel. No Party has been influenced, coerced, or induced to make this compromise and settlement by improper actions by any other Party.

c. Each of the Parties represents and warrants that it is authorized to enter into this Settlement Agreement and that the execution and delivery of this Settlement Agreement and the consummation of this transaction will not conflict with or result in any violation or default under any provision of its articles of incorporation, charter, by-laws or partnership agreement or of any decree, statute, law, ordinance, rule or regulation applicable to it.

d. Each signatory of this Settlement Agreement declares, warrants, and represents that he or she has the general and specific authority to enter into and to execute this Settlement Agreement.

e. Each Party understands, acknowledges and agrees that if any fact now believed to be true is found hereafter to be other than, or different from, that which is now believed, each expressly assumes the risk of such difference in fact and agrees that this

6 of 11

Deputy Receiver

Settlement Agreement shall and will remain effective notwithstanding any such difference in fact.

12.    **Indemnification.**

a.    La Ley covenants and agrees to indemnify and hold harmless the Department of Financial Services, Receiver, and its employees and agents from and against any and all liability, loss, damage, cost, expense (including all reasonable fees of legal counsel and related disbursements), causes of action, suits, claims, demands or judgements of any nature whatsoever (i) arising from occurrences on or after the Effective Date of this Settlement Agreement involving the Assigned Claims, including without limitation, litigation initiated by La Ley related to any of the Assigned Claims, (ii) La Ley's breach of its obligations, covenants, warranties or representations under this Settlement Agreement, or (iii) La Ley's performance under this Settlement Agreement, excluding claims arising out of Receiver's gross negligence or willful misconduct.

b.    Nothing stated in the Settlement Agreement is, or shall be deemed to be a waiver of the immunity afforded to the Department of Financial Services, Receiver, its employees, and agents pursuant to section 631.392, Florida Statutes, for any action taken in the performance of Receiver's powers and duties under chapter 631. Nothing herein shall be deemed to indemnify La Ley from any liability or claim arising out of the negligent performance or failure of performance of La Ley or any unrelated third party.

13.    **Expenses.** Each Party shall pay its own legal, accounting, and other fees and expenses incident to the negotiation and execution of this Settlement Agreement and all subsequent agreements.

14.    **Confidentiality.** The Parties agree and warrant that the compensation provisions of this Settlement Agreement and portions of records that evidence the negotiations leading to the amount of the Settlement Payment contemplated under this Settlement Agreement, including the audit of La Ley conducted by Receiver to assist the Parties in determining the amount of the Settlement Payment (the "Audit"), are to remain confidential to the extent permitted by law.

a.    Receiver acknowledges that La Ley and its assignees have developed an IT system and legal methodologies, which system and methodologies were reviewed during the course of the Audit. Receiver further acknowledges that La Ley considers information provided to or obtained by the Receiver in connection with the Audit, the compensation provisions of this Settlement Agreement, and any portions of records that evidence the negotiations leadings to the amount of the Settlement Payment to be confidential and proprietary trade secret information.

b.    La Ley acknowledges that pursuant to the provisions of Chapter 119, Florida Statutes, the Receiver has a duty to provide reasonable public access to all documents or other material made or received in connection with the transaction of official business, unless such document is made exempt or confidential by law.

c.    The Parties acknowledge that "data, programs, or supporting documentation that is a trade secret as defined in s. 812.081, that is held by an agency as defined in chapter

7 of 11

Deputy Receiver

119, and that resides or exists internal or external to a computer, computer system, computer network, or electronic device is confidential and exempt from the provisions of s. 119.07(1) and s. 24(a), Art. I of the State Constitution." § 815.04, Fla. Stat.

    d.    Upon the Receiver's receipt of a public records request which includes within its scope the compensation provisions of this Settlement Agreements or portions of records that evidence the negotiations leading to the amount of the Settlement Payment contemplated under this Settlement Agreement, including documents produced or created during the audit of the La Ley conducted by the Receiver to assist the Parties in determining the amount of the Settlement Payment, the Receiver shall provide

        i.    La Ley with notice of such a request and an opportunity to protect such records or portions of records from disclosure. The notice shall inform La Ley that it has thirty (30) days following receipt of such notice to file an action in circuit court seeking a determination whether the record or portions of the record in question contains trade secrets and an order barring public disclosure of the record. If La Ley files an action within thirty (30) days after receipt of notice of the public records request, the Receiver may not release the records or the records without redacting the purportedly confidential portions thereof pending the outcome of the legal action. The failure to file an action within thirty (30) days constitutes a waiver of any claim of confidentiality, and the Receiver shall release the records as requested.

        ii.    The requestor with (1) the records requested to the extent they are public records not made confidential and exempt by law and/or (2) the records requested to the extent they are public records with the confidential and exempt information redacted.

    15.    **Entire Agreement.** This Settlement Agreement sets forth the entire understanding of the Parties with regard to its subject matter, and supersedes and merges all prior discussions, agreements, promises, representations, warranties and arrangements between them with regard to such subject matter, and neither Party shall be bound by any agreement, representation or warranty regarding such subject matter other than as expressly set forth in this Settlement Agreement, in the Promissory Note, or in a subsequent writing signed by the Party to be bound thereby. This Settlement Agreement may not be modified or supplemented except by a writing signed by the Party to be bound thereby that specifies the effective date such amendment or waiver takes effect.

    16.    **Binding Effect.** Immediately upon full execution of this Settlement Agreement by and on behalf of all Parties, its terms, covenants, conditions, and provisions, obligations, undertakings, rights and benefits, shall be binding upon and shall inure to the benefit of the undersigned parties and their respective heirs, executors, liquidators, administrators, representatives, subrogees, successors and assigns.

    17.    **Amendment; waiver.** This Settlement Agreement may be amended or modified only by a writing executed by each of the Parties. No failure or delay in exercising any right, power, or privilege under this Settlement Agreement shall operate as a waiver thereof, nor shall

8 of 11

Deputy Receiver

any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power, or privilege under this Settlement Agreement.

18.    **Governing Law.** This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Florida applicable to agreements made and to be performed entirely within such State. The Parties agree that any action or proceeding, however characterized, arising out of or relating to this Settlement Agreement shall be brought only in the Circuit Court of the Second Judicial Circuit in and for Leon County Florida, and the Parties irrevocably submit to the exclusive jurisdiction of such court for the purposes of any such action or proceeding and irrevocably agree to be bound by any judgment rendered by such court with respect to any such action or proceeding. The Parties waive any objection they may now or hereafter have to the venue of any such action or proceeding in such court and any claim that such action or proceeding has been brought in an inconvenient forum. Any order or judgment of the foregoing court may be enforced in any court having jurisdiction of the Parties and/or the subject matter. The Parties agree that in any action or proceeding arising out of or relating to this Settlement Agreement, or the enforcement of any provisions thereof, the Court is empowered to grant any legal or equitable relief that may be available, including without limitation, specific performance, injunctive relief and any mandatory injunction it deems appropriate.

19.    **Conflict with Law.** If any provision of this Settlement Agreement should be declared invalid by a court of general jurisdiction and superseded by specific law or regulation, the remainder of the part or provision and the Settlement Agreement will remain in full force and effect provided the essential terms and conditions of this Settlement Agreement for each Party remain valid, binding and enforceable.

20.    **Assignment.** The Parties agree that prior to payment of the Final Settlement Payment described herein, the Parties shall not assign this Settlement Agreement, directly or indirectly, in whole or in part, without prior written approval of the other Party; provided, however, that the Assigned Claims may be assigned by and among any of the companies collectively referred to herein as "La Ley," and the Receiver acknowledges that any assignment of the rights described hereunder by or among those companies collectively referred to as "La Ley" occurring prior to the execution of this Settlement Agreement shall be valid and enforceable.

21.    **Notices.** Wherever notice is required under this Settlement Agreement, it shall be in writing, sent by certified mail or overnight delivery, and addressed:

If to Receiver                    **State of Florida, Department of Financial Services**
                                  **Division of Rehabiliation and Liquidation**
                                  **As Receiver of Florida Healthcare Plus, Inc.**
                                  Attn:  Deputy Receiver of FHCP
                                  2020 Capital Circle SE
                                  Suite 310
                                  Tallahassee, FL 32301

9 of 11

Deputy Receiver

If to La Ley                    **La Ley Recovery Systems Inc.**

                                Attn: _____

                                _____

                                _____

22.    **Negotiated Agreement.** The Parties and their counsel each have contributed to this Settlement Agreement and the fact that the initial and final draft shall have been prepared by any one Party shall not be used in any form in the construction or interpretation of this Settlement Agreement or any of its provisions.

23.    **Headings**. Headings or titles to the several sections herein are for identification purposes only and shall not be construed as forming a part thereof and shall not affect the meaning or interpretation of the Settlement Agreement.

24.    **Counterparts**. This Settlement Agreement may be executed in any number of counterparts, each of which is deemed an original, but all of which together constitute one and the same instrument. The exchange of signature pages by facsimile or e-mail to all Parties constitutes execution and delivery of this Settlement Agreement.

**[signature page follows]**

10 of 11

Deputy Receiver

DocuSign Envelope ID: C8069111-0F4D-4F53-A8DB-E40548699BB8

IN WITNESS WHEREOF, Receiver and La Ley, intending to be legally bound and being duly authorized, have executed this Settlement Agreement as of the date first set forth above.

La Ley Recovery Systems, Inc.

By: _____
Name: Mayra Ruiz
Title: Managing Member

La Ley Recovery Systems - FHCP, Inc.

By: _____
Name: Mayra Ruiz
Title: Managing Member

MSPA Claims 1, LLC

By: _____
Name: Walter Lista
Title: Executive Vice President

MSP Recovery LLC

By: _____
Name: Walter Lista
Title: Executive Vice President

MSP Recovery Services, LLC

By: _____
Name: Walter Lista
Title: Executive Vice President

Florida Department of Financial Services as Receiver of Florida Healthcare Plus, Inc.

By: _____
Name: Mary Linzee Branham
Title: Assistant Division Director

11 of 11

_____
Deputy Receiver

DocuSign Envelope ID: C8069111-0F4D-4F53-A8DB-E40548699BB8

**Exhibit A**

## PROMISSORY NOTE

June 1, 2016
Tallahassee, Florida

1.    Principal.  For value received, and subject to the terms and conditions set forth herein, **La Ley Recovery Systems Inc.**, a Florida corporation, **La Ley Recovery Systems – FHCP, Inc.**, a Florida corporation, **MSP Recovery LLC**, a Florida Limited Liability Company, **MSP Recovery Services, LLC**, a Florida Limited Liability Company, and **MSPA Claims 1, LLC**, a Florida Limited Liability Company, jointly and severally ("Makers"), hereby agree and promise to pay to the order of **Florida Department of Financial Services as Receiver of Florida Healthcare Plus, Inc.** or its assigns ("Holder", and together with the Makers, "Parties"), the sum of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (the "Principal") at 2020 Capital Circle SE, Suite 310, Tallahassee Florida 32301 or such other address as Holder may specify by written notice to the Makers, in the manner more specifically set forth below. All sums owing under this note are payable in lawful money of the United States of America.

2.    Payment of Principal and Interest.  The entire Principal balance shall be due and payable in one installment, which shall be made on or before June 1, 2017.  Makers shall pay all amounts due and owning under this Promissory Note in full when due without setoff, deduction, or withholding for any reason whatsoever.

3.    Late Charge.  In the event Makers fail to timely make payment of Principal due under this Promissory Note, Holder shall assess and Makers shall pay a late charge equal to the lesser of Four and Three-Quarters Percent (4.75%) of the full amount due or the maximum amount permitted by applicable law. Payment will be considered untimely and past due, if the entire Principal balance is not paid within five (5) calendar days from and including the date on which it became due, whether by acceleration or otherwise. The assessment of a late charge shall not affect or diminish Holder's rights and remedies in the event of default as set forth in Section 5.

4.    Event of Default.  Time is of the essence of this Promissory Note. Each of the following shall constitute an Event of Default under this Promissory Note:

(a) Failure of Makers to pay the entire Principal balance owed on this Promissory Note when same shall become due and payable, but only after same remains more than five (5) days past due; or

(b) Failure of Makers to perform or comply with any other representation, warranty or covenant contained in this Promissory Note; or

DocuSign Envelope ID: C8069111-0F4D-4F53-A8DB-E40548699BB8

(c) Any assignment by Makers for the benefit of creditors, or filing by or against Makers of a petition in bankruptcy, or adjudication of Makers as bankrupt or insolvent, or any action taken by Makers' directors or stockholders seeking to dissolve, liquidate or cease doing business as a going concern.

    5.    Rights and Remedies Upon the Occurrence of an Event of Default.

    (a) Upon the occurrence of an Event of Default specified in Section 4(a), Holder may, by written notice to Makers, declare this Promissory Note to be due and payable, whereupon the full Principal balance of this Promissory Note, and all other sums payable hereunder, shall become immediately due and payable without presentment, demand, protest, or other notice of any kind, all of which are hereby expressly waived, anything contained herein evidence the contrary notwithstanding.

    (b) Upon the occurrence of an Event of Default specified in Section 4(b) or 4(c), the unpaid Principal balance of, and all other sums payable with regard to, this Promissory Note shall automatically and immediately become due and payable, in all cases without any action on the part of Holder.

    6.    Default Interest. Upon the occurrence of an Event of Default, Holder shall be entitled to receive and Makers agree and shall be required to pay interest on the entire unpaid Principal balance at an annual rate equal to the lesser of Five Percent (5%) or the maximum amount permitted by applicable law, and shall accrue from the date of default until all obligations under this Promissory Note are paid in full.

    7.    Transferability. This Promissory Note is not transferable by Makers without the prior written consent of Holder.

    8.    Non-Recourse. Notwithstanding any other provision of this Promissory Note, in no event shall Makers' shareholders, officers, directors, or managers have any personal liability for any of the obligations hereunder. Holder acknowledges and agrees, upon any Event of Default to look solely to Makers and any collateral pledged by Makers in support of Makers' obligations.

    9.    Modification and Waiver. This Promissory Note may not be amended, modified, or supplemented except by written agreement signed by the party against which the enforcement of the amendment, modification, or supplement is sought. No waiver of any of the provisions of this Promissory Note shall be deemed, or shall constitute, a waiver of any other provision. No waiver shall be binding unless executed in writing by the party making the waiver.

    10.    Attorney Fees. In the event that Holder engages attorney(s) to collect sums due or to enforce or construe any provision of this Promissory Note, or as a consequence of any default whether or not any legal action is filed, Makers shall immediately pay on demand all reasonable attorneys' fees, costs, and expenses of Holder, together with interest from the date of demand until paid.

DocuSign Envelope ID: C8069111-0F4D-4F53-A8DB-E40548699BB8

11.     Waiver of Presentment, Etc. Makers and all others who may become liable for the payment of all or any part of the sums that become due and payable under this Promissory Note do hereby severally waive presentment and demand for payment, notice of nonpayment, notice of dishonor, protest, notice of protest, notice of intent to accelerate the maturity hereof and all other notice, except to the extent that specific notices are required by this Promissory Note.

12.     Full Authority. Each of the Makers represents and warrants that it is authorized to enter into this Promissory Note and that the execution and delivery of this Promissory Note and the consummation of this transaction will not conflict with or result in any violation or default under any provision of its articles of incorporation, charter, by-laws or partnership agreement or of any decree, statute, law, ordinance, rule or regulation applicable to it.

13.     Notices.  Any notice of other communication required by this Promissory Note shall be written and shall be (a) delivered in person or by courier, or (b) mailed by first class certified mail, return receipt requested, as follows, or to such other address as a party may designate to the other in writing:

**Makers**:                              **Holder**:

La Ley Recovery Systems Inc.,            Florida Department of Financial Services
La Ley Recovery Systems - FHCP, Inc.     Division of Rehabilitation &Liquidation
MSPA Claims 1, LLC                       as Receiver of FHCP
MSP Recovery LLC
MSP Recovery Services, LLC


_____                  2020 Capital Circle, SE, Suite 310

_____                  Tallahassee, Florida 32301

If delivered personally or by courier, the date on which the notice or other document is delivered shall be the date on which the delivery is made, and if delivered by registered or certified mail, the date on which the notice or other document is received shall be the date of delivery.

11.     Headings. All section headings contained in this Promissory Note are for convenience of reference only, do not form a part of this Promissory Note, and shall not affect in any way the meaning or interpretation of this Promissory Note.

12.     Governing Law and Consent to Jurisdiction. This Promissory Note shall be governed by and construed under the laws of the State of Florida. The Parties agree that any action or proceeding, however characterized, arising out of or relating to this Promissory Note shall be brought only in the Circuit Court of the Second Judicial Circuit in and for Leon County Florida, and the Parties irrevocably submit to the exclusive jurisdiction of such court for the purposes of any such action or proceeding and irrevocably agree to be bound by any judgment rendered by such court with respect to any such action or proceeding.  The Parties waive any objection they

DocuSign Envelope ID: C8069111-0F4D-4F53-A8DB-E40548699BB8

may now or hereafter have to the venue of any such action or proceeding in such court and any claim that such action or proceeding has been brought in an inconvenient forum.

13.     Severability.  In the event any provision of this Promissory Note is deemed to be invalid, illegal, or unenforceable, all other provisions of this Promissory Note that are not affected by the invalidity, illegality, or unenforceability shall remain in full force and effect.

[Signature page follows]

DocuSign Envelope ID: C8069111-0F4D-4F53-A8DB-E40548699BB8

**MAKERS**

**La Ley Recovery Systems, Inc.**

By: _Mayra Ruiz_
Name: Mayra Ruiz
Title: Managing Member
Date: 6/1/2016

**La Ley Recovery Systems – FHCP, Inc.**

By: _Mayra Ruiz_
Name: Mayra Ruiz
Title: Managing Member
Date: 6/1/2016

**MSPA Claims 1, LLC**

By: _Walter Lista_
Name: Walter Lista
Title: Executive Vice President
Date: 6/1/2016

**MSP Recovery LLC**

By: _Walter Lista_
Name: Walter Lista
Title: Executive Vice President
Date: 6/1/2016

**MSP Recovery Services, LLC**

By: _Walter Lista_
Name: Walter Lista
Title: Executive Vice President
Date: 6/1/2016

**HOLDER**

**Florida Department of Financial Services as Receiver of Florida Healthcare Plus, Inc.**

By: _Mary Linzee Branham_
Name: Mary Linzee Branham
Title: Assistant Division Director
Date: _____

DocuSign Envelope ID: C8069111-0F4D-4F53-A8DB-E40548699BB8

**Exhibit B**

**THIRD PARTY COMMUNICATIONS**

Please be advised that on April 15, 2014, Florida Healthcare Plus, Inc. ("FHCP") assigned to La Ley Recovery System, Inc. and its affiliated entities, listed below including MSP, all rights, title, and interest held by to recoveries including any rights, title and interest assigned to FHCP pursuant to contractual agreements with FHCP members, related to accidents or incidents recoverable pursuant to the Medicare Secondary Payer Act, the Medicaid Third Party Liability Act, and/or any other applicable Federal or State subrogation laws, and all rights, title and interest to recover payments made by FHCP on behalf of FHCP members pursuant to various legal theories related to accidents or incidents recoverable pursuant to the Medicare Secondary Payer Act, the Medicaid Third Party Liability Act, and/or any other applicable Federal or State subrogation laws.

On December 10, 2014, the Second Judicial Circuit Court, in and for Leon County, Florida, entered an Order Appointing the Florida Department of Financial Services as Receiver of FHCP ("Receiver") for Purposes of Immediate Rehabilitation and Automatic Liquidation Effective January 1, 2015, Injunction, and, Notice of Automatic Stay. The Receiver has expressly acknowledged and confirmed the above-referenced assignment.

EXHIBIT C
BUSINESS ASSOICATE AGREEMENTS

DocuSign Envelope ID: 6EC204BB-4587-4841-93B7-17CED4487436

## BUSINESS ASSOCIATE AGREEMENT

THIS BUSINESS ASSOCIATE AGREEMENT (the "Agreement") is entered into by and between the Florida Department of Financial Services, Division of Rehabilitation and Liquidation (the "RECEIVER"), as the RECEIVER of **Florida Healthcare Plus, Inc.**, pursuant to the court Order entered in Leon County, Florida Circuit Court Case No.: 2014-CA-2762, and **La Ley Recovery Systems, Inc.** ("Business Associate"), effective the 1st day of June, 2016. This Agreement shall be incorporated into and made part of the Underlying Agreement (defined below).

## RECITALS

WHEREAS, the RECEIVER and Business Associate are parties to an agreement (the "Underlying Agreement") pursuant to which Business Associate provides certain services to the RECEIVER and, in connection with those services, the RECEIVER discloses to Business Associate certain protected health information ("PHI") that is subject to protection under the Health Insurance Portability and Accountability Act of 1996, as amended from time to time ("HIPAA"); and

WHEREAS, the Parties wish to set forth their understandings with regard to the use and disclosure of Protected Health Information ("PHI") by Business Associate in performance of its obligations in compliance with (1) the Privacy and Security Regulations; and (2) Subtitle D of the Health Information Technology for Economic and Clinical Health Act, Title XIII of Public Law 111-005 (42 U.S.C.A. Section 17921 et seq., subchapter III, Privacy).

NOW THEREFORE, for and in consideration of the recitals above and the mutual covenants and conditions herein contained, the RECEIVER and Business Associate enter into this Agreement to provide a full statement of their respective responsibilities.

## SECTION I - DEFINITIONS

1.1    Definitions.  Capitalized terms shall have the meanings given to them in the Privacy and Security Regulations and HITECH, which are incorporated herein by reference.

## SECTION II – OBLIGATIONS AND ACTIVITIES OF BUSINESS ASSOCIATE

2.1    Performance of Agreement.  Business Associate, its agents and employees (collectively referred to as "Business Associate") agrees to not use or further disclose PHI other than as permitted or required by this Agreement, the Underlying Agreement, or as Required by Law.

2.2    Safeguards for Protection of PHI.  Business Associate agrees to use reasonable safeguards to prevent use or disclosure of the PHI other than as provided for by this Agreement. Business Associate agrees to cooperate with the RECEIVER's efforts to mitigate, to the extent practicable, any harmful effects that arise from a use or disclosure of PHI by

DocuSign Envelope ID: 6EC204BB-4587-4841-93B7-17CED4487436

Business Associate in violation of the requirements of this Agreement in accordance with 45 C.F.R. Section 164.514(d).

2.3 Electronic Health Information Security and Integrity. Business Associate shall develop, implement, maintain and use appropriate administrative, technical and physical security measures consistent with and in compliance with the Security Regulations and HITECH to preserve the integrity, confidentiality and availability of all electronic PHI that it creates, receives, maintains or transmits on behalf of the RECEIVER. Business Associate shall document and keep these security measures current in accordance with the Security Regulations and HITECH (including 42 U.S.C.A. Section 17931).

2.4 Protection of Exchanged Information in Electronic Transactions. If Business Associate conducts any Standard Transaction for or on behalf of the RECEIVER, Business Associate shall comply, and shall require any subcontractor or agent conducting such Standard Transaction to comply, where applicable.

2.5 Reporting. As described below, Business Associate shall report to the RECEIVER in writing (a) any use or disclosure of PHI not permitted under 45 C.F.R. Section 164, Subpart E, this Agreement, or by law, (b) any Security Incident (as defined below) of which it becomes aware and (c) any Breach of Unsecured PHI in accordance with HITECH, including 42 U.S.C.A. Section 17932; provided, however, that the Parties acknowledge and agree that this Section constitutes written notice by Business Associate to the RECEIVER of the ongoing existence and occurrence of attempted but Unsuccessful Security Incidents (as defined below). "Unsuccessful Security Incidents" will include, but not be limited to, pings and other broadcast attacks on Business Associate's firewall, port scans, unsuccessful log-on attempts, denials of service and any combination of the above, so long as no such incident results in unauthorized access, use or disclosure of PHI. For purposes of this Agreement, the term "Security Incident" means the successful unauthorized access, use, disclosure, modification or destruction of electronic PHI.

(a) Reporting Security Incidents or Improper Uses or Disclosures. Business Associate shall make the report to the RECEIVER within three (3) business days after Business Associate learns of such unauthorized use or disclosure or Security Incident. In accordance with 45 C.F.R. Section 164.404, any unauthorized use or disclosure of PHI that is a Breach of Unsecured PHI shall be reported as required under subsection (b) below.

(b) Notification of a Breach. Pursuant to 45 C.F.R. Section 164.410, Business Associate shall provide written notice to the RECEIVER of any Breach of Unsecured PHI within three business days after Business Associate discovers the Breach. Business Associate's report to the RECEIVER shall identify or describe: (i) the affected Individual whose Unsecured PHI has been or is reasonably believed to have been accessed, acquired or disclosed, if known; (ii) the incident, including the date of the Breach and the date of the discovery of the Breach, if known; (iii) the types of Unsecured PHI involved in the Breach; (iv) any specific steps the Individual should take to protect him or herself from potential harm related to the

DocuSign Envelope ID: 6EC204BB-4587-4841-93B7-17CED4487436

Breach; (v) what the Business Associate is doing to investigate the Breach, to mitigate losses and to protect against further Breaches; (vi) contact procedures for how the Individual can obtain further information from the Business Associate; and (vii) such other information as required by 45 C.F.R. Section 164.404(c).

2.6 <u>Use of Subcontractors</u>. Business Associate shall require each of its subcontractors or agents to whom Business Associate may provide PHI on behalf of the RECEIVER to agree to written contractual provisions that impose at least the same obligations to protect such PHI as are imposed on Business Associate by this Agreement, the Privacy and Security Regulations and HITECH.

2.7 <u>Access to PHI</u>. To the extent Business Associate possesses PHI in a Designated Record Set, Business Associate shall provide access, at the written request of the RECEIVER, to PHI in a Designated Record Set, to the RECEIVER to meet the requirements under Title 45, Section 164.524 of the C.F.R. or applicable state law and to meet the electronic transmission requirements for access to Electronic Health Records by Individuals in accordance with HITECH, including 42 U.S.C.A. Section 17935(e).

2.8 <u>Amendments to PHI</u>. To the extent Business Associate possesses PHI in a Designated Record Set, Business Associate agrees to make any amendments to PHI in a Designated Record Set that the RECEIVER directs or agrees to pursuant to 45 C.F.R. Section 164.526 at the request of the RECEIVER in the time and manner mutually agreed upon by the Parties.

2.9 <u>Allowing the RECEIVER to Monitor Compliance</u>. Business Associate will make its internal practices, books and records relating to the use and disclosure of PHI received from, or created or received by Business Associate on behalf of, the RECEIVER available to the Secretary for purposes of the Secretary determining the RECEIVER's compliance with the Privacy Rule and the Security Rule. Upon reasonable notice and prior written request, Business Associate agrees to make available to the RECEIVER during normal business hours, at Business Associate's place of business, such practices, books and records for the purpose of assessing Business Associate's compliance with the Privacy Rule or Security Rule; provided however, that such request does not compromise other proprietary or confidential information of Business Associate or its other customers and is subject to attorney-client and other applicable legal privileges.

2.10 <u>Mitigation</u>. Business Associate agrees to mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of PHI by Business Associate in violation of the requirements of this Agreement.

2.11 <u>Marketing</u>. Business Associate shall not receive direct or indirect payment for marketing communications which include PHI without authorization from the RECEIVER or the affected Individuals unless such communication is permitted under the Privacy Regulations and HITECH, including 42 U.S.C.A. Section 17936.

Rev. 5/16                                3

DocuSign Envelope ID: 6EC204BB-4587-4841-93B7-17CED4487436

2.12   <u>Sale of PHI.</u>   Business Associate shall not receive direct or indirect payment in exchange for any PHI including Electronic Health Records, unless Business Associate receives authorization from the RECEIVER or by all affected Individuals, except as permitted under HITECH including 42 U.S.C.A. Section 17935(d).

## SECTION III – PERMITTED USES AND DISCLOSURES BY BUSINESS ASSOCIATE

3.1   <u>General.</u>   Except as otherwise limited in this Agreement, Business Associate may use or disclose PHI to perform functions, activities, or services for, or on behalf of, the RECEIVER as specified in the Underlying Agreement, provided that such use or disclosure would not violate the Privacy Rule if done by the RECEIVER.

3.2   <u>Specific.</u>   Except as otherwise limited in this Agreement, Business Associate may use or disclose PHI for the proper management and administration of the Business Associate, provided that such disclosures are Required by Law, or are permitted by law provided that Business Associate obtains reasonable assurances from the person to whom the information is disclosed that it will remain confidential and will be used or further disclosed only as required by law or for the purpose for which it was disclosed to the person, and that the person will notify the Business Associate of any instances of which it is aware in which the confidentiality of the information has been breached.   Additionally, except as limited in this Agreement, Business Associate may use PHI to provide Data Aggregation Services to Receiver (to the extent detailed in the Underlying Agreement) as permitted by 45 C.F.R. Section 164.504(e)(2)(i)(B). Business Associate may also de-identify PHI in accordance with the standards set forth in 45 C.F.R. Section 164.514(b) and may use or disclose such de-identified data unless prohibited by applicable law.

3.3   <u>Access to PHI.</u>   Business Associate shall refer to the RECEIVER all requests by Individuals for information about, or accounting of, disclosures of PHI in accordance with 45 C.F.R. Section 164.524 and Section 2.7.

3.4   <u>Documentation of Disclosures.</u>   Business Associate agrees to document disclosures of PHI, other than for treatment, payment or healthcare operations or disclosures that are incidental to another permissible disclosure, and information related to such disclosures  to the extent required for the RECEIVER to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 C.F.R. Section 164.528.

3.5   <u>Accounting of Disclosures.</u>   Business Associate agrees to provide to the RECEIVER, in a reasonable time and manner, but not later than ten (10) business days of the RECEIVER's written request, information collected in accordance with Section 3.4 of this Agreement, to the extent required to permit the RECEIVER to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 C.F.R. Section 164.528. Business Associate shall document all disclosures of PHI and information related to such disclosures as would be required for the RECEIVER to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with Title 45,

DocuSign Envelope ID: 6EC204BB-4587-4841-93B7-17CED4487436

Section 164.528 of the C.F.R., including PHI in Electronic Health Records in accordance with HITECH. Business Associate agrees to provide the RECEIVER, information collected in accordance with this paragraph, to permit the RECEIVER to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with Title 45, Section 164.528 of the C.F.R. and HITECH, including 42 U.S.C.A. Section 17935(c) with respect to Electronic Health Records. To the extent a request for an accounting relates to disclosures of PHI in Electronic Health Records by Business Associate, Business Associate shall provide the accounting directly to the RECEIVER upon request.

3.6   Violations of Law. Business Associate may use PHI to report violations of law to appropriate Federal and State authorities, consistent with 45 C.F.R. Section 164.502(j)(1).

## SECTION IV – OBLIGATIONS OF RECEIVER

4.1   Notice of Privacy Practices. The RECEIVER shall provide Business Associate with the notice of privacy practices that [company name], has produced in accordance with 45 C.F.R. Section 164.520, as well as any changes to such notice that may affect Business Associate's use or disclosure of PHI no later than fifteen (15) days prior to the effective date of the change or limitation.

4.2   Changes in Use of PHI. The RECEIVER shall provide Business Associate with any changes in, or revocation of, permission by Individual to use or disclose PHI, if such changes affect Business Associate's permitted or required uses and disclosures. Business Associate shall have a reasonable period of time to act on such notice but shall be provided written notice no later than fifteen (15) days prior to the effective date of the change or limitation.

4.3   Restrictions to Use of PHI. The RECEIVER shall notify Business Associate in writing no later than fifteen (15) days prior to the effective date of any restriction on the use or disclosure of PHI that Receiver has agreed to in accordance with 45 C.F.R. Section 164.522. Business Associate shall comply with the terms of such restriction.

4.4   RECEIVER Requests. The RECEIVER represents and warrants it shall not request Business Associate to use or disclose PHI in any manner that would not be permissible under the Privacy Rule if done by the RECEIVER. In the event the RECEIVER requests Business Associate to use or disclose PHI in any manner, and such use or disclosure results in a violation or alleged violation of HIPAA or this Agreement, the RECEIVER will hold harmless Business Associate from all liabilities, costs and damages arising out of or in any way connected with such use or disclosure, including reasonable attorney's fees.

4.5   RECEIVER Disclosures. The RECEIVER represents and warrants to Business Associate that the RECEIVER will not disclose any PHI to Business Associate unless the RECEIVER has obtained any consents and authorizations that may be required by law or otherwise necessary for such disclosure.

DocuSign Envelope ID: 6EC204BB-4587-4841-93B7-17CED4487436

## SECTION V - TERM/TERMINATION

5.1     <u>Term</u>.  The term of this Agreement shall be effective as of the day and year first above written, and shall continue for as long as PHI is being exchanged by the RECEIVER and Business Associate.

5.2     <u>Termination for Cause</u>. Either party may terminate this Agreement and the Underlying Agreement for a material breach of this Agreement by the other party if such breach is not cured within thirty (30) days of receipt of written notice thereof.  If neither termination nor cure are feasible, the RECEIVER shall report the violation to the Secretary.

5.3     <u>Termination After Repeated Violations</u>.   Either party may terminate the Underlying Agreement if either party repeatedly violates this Agreement or any provision hereof, irrespective of whether, or how promptly, either party may remedy such violation after being notified of the same.

5.4     <u>Effect of Termination</u>. Upon termination of this Agreement, Business Associate shall destroy or return to the RECEIVER all PHI provided by the RECEIVER to the Business Associate or created or received by the Business Associate on behalf of the RECEIVER. If it is infeasible for Business Associate to return or destroy PHI upon termination of this Agreement, Business Associate will maintain the protection required under this Agreement of the PHI for the period of time required under applicable law, or in accordance with Business Associate's internal record retention schedule as in effect from time to time, at which time Business Associate shall destroy the PHI in accordance with acceptable business procedures.   This provision shall also apply to PHI in the possession of subcontractors or agents of the Business Associate, and Business Associate shall be fully responsible for such compliance.

5.5     <u>Survival</u>.  The rights and obligations of Business Associate under Section 5.4 of this Agreement shall survive the termination of this Agreement.

## SECTION VI - BREACH COST REIMBURSEMENT

6.1     <u>Breach Cost Reimbursement.</u> In the event of a Breach caused solely by Business Associate and the HIPAA Regulations require notice to individuals pursuant to 45 C.F.R. Sections 164.404 and 164.406, Business Associate agrees to reimburse the RECEIVER for the reasonable and substantiated costs related to the following: providing notifications to affected individuals, the media, or the Secretary, providing credit monitoring services to the affected individuals, if appropriate, for up to one (1) year, any fines and penalties assessed against the RECEIVER directly attributable to Business Associate's Breach, investigation costs, mitigation efforts required under the HIPAA Regulations, and attorney's fees incurred directly as a result of the Breach (but not in connection with any third-party claims).

DocuSign Envelope ID: 6EC204BB-4587-4841-93B7-17CED4487436

## SECTION VII - MISCELLANEOUS

7.1     <u>Construction</u>.  This Agreement shall be construed as broadly as necessary to implement and comply with HIPAA and the HIPAA regulations.  The parties agree that any ambiguity in this Agreement shall be resolved in favor of a meaning that complies and is consistent with HIPAA and HIPAA regulations.  A reference in this Agreement to a section in the Privacy Rule means the section as in effect or as amended.  Any ambiguity in this Agreement shall be resolved to permit the Parties to comply with the Privacy Rule.

7.2     <u>Notice</u>.  All notices and other communications required or permitted pursuant to this Agreement shall be in writing, addressed to the party at the address set forth at the end of this Agreement, or to such other address as either party may designate in writing from time to time.  All notices and other communications shall be mailed by registered or certified mail, return receipt requested, postage pre-paid, or transmitted by hand delivery or telegram.  All notices shall be effective as of the date of delivery of personal notice or on the date of receipt, whichever is applicable.

7.3     <u>Modification of this Agreement</u>.  The parties recognize that this Agreement may need to be modified from time to time to ensure consistency with amendments to and changes in applicable federal and state laws and regulations, including, but not limited to, HIPAA.  The parties agree to execute any additional amendments to this Agreement reasonably necessary for each party to comply with HIPAA, including any requirements related to a Chain of Trust Agreement between the parties pursuant to the HIPAA security standards.  This Agreement shall not be waived or altered, in whole or in part, except in writing signed by the parties.

7.4     <u>Transferability</u>.  This Agreement may not be assigned by either party without the express written consent of the other.

7.5     <u>Governing Law and Venue</u>.  This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of Florida, without giving effect to its conflict of laws provisions.

7.6     <u>Binding Effect</u>.  This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective permitted successors and assigns.

7.7     <u>Execution</u>.  This Agreement may be executed in multiple counterparts, each of which shall constitute an original and all of which shall constitute but one Agreement.

7.8     <u>Gender and Number</u>.  The use of the masculine, feminine or neutral genders, and the use of the singular and plural, shall not be given an effect of any exclusion or limitation herein.  The use of the word "person" or "party" shall mean and include any individual, trust, corporation, partnership or other entity.

DocuSign Envelope ID: 6EC204BB-4587-4841-93B7-17CED4487436

7.9     <u>Priority of Agreement</u>.  If any portion of this Agreement is inconsistent with the terms of the Underlying Agreement, the terms of this Agreement shall prevail.  Except as set forth above, the remaining provisions of the Underlying Agreement are ratified in their entirety.

7.10    <u>Entire Agreement.</u>  This Agreement constitutes the entire Agreement between the parties concerning the subject herein, and supersedes all prior oral or written agreements between the parties on same.

7.11    <u>Beneficiaries.</u> The parties agree that there shall be no incidental or intended third-party beneficiaries under this Agreement, nor shall any other person on entity have rights arising from the same.

IN WITNESS WHEREOF, the parties have hereunto set their hands effective the day and year first above written.

[signature page follows]

Rev. 5/16                          8

DocuSign Envelope ID: 6EC204BB-4587-4841-93B7-17CED4487436

**The RECEIVER**
Signature: _____
Name: <u>Mary Linzee Branham</u>
Title: <u>Assistant Division Dir</u>
Date: <u>June 1, 2016</u>

Address: <u>2020 Capital Circle, SE</u>
         <u>Alexander Building, 3rd Floor</u>
         <u>Tallahassee, FL  32301</u>

**BUSINESS ASSOCIATE**
Signature: <u>Mayra Ruiz</u>
           DocuSigned by:
           Mayra Ruiz
           4D82DC69D6C0401...
Name: _____
Title: <u>Managing Member</u>
Date: <u>6/1/2016</u>

Address: <u>5000 SW 75 Ave Suite 400</u>
         <u>Miami, Fl. 33155</u>
         _____

Rev. 5/16                          9

The RECEIVER
Signature:
Name: Mary Linzeé Branham
Title:  Assistant Division Dir
Date:   June 1, 2016

Address: 2020 Capital Circle, SE
Alexander Building, 3rd Floor
Tallahassee, FL  32301

**BUSINESS ASSOCIATE**
Signature:_____
Name: _____
Title:  _____
Date:  _____

Address: _____
_____
_____

DocuSign Envelope ID: F3A7C748-DDF4-4132-9449-29B8289AAE65

## BUSINESS ASSOCIATE AGREEMENT

THIS BUSINESS ASSOCIATE AGREEMENT (the "Agreement") is entered into by and between the Florida Department of Financial Services, Division of Rehabilitation and Liquidation (the "RECEIVER"), as the RECEIVER of **Florida Healthcare Plus, Inc.**, pursuant to the court Order entered in Leon County, Florida Circuit Court Case No.: 2014-CA-2762, and **La Ley Recovery Systems --FHCP, Inc.** ("Business Associate"), effective the 1st day of June, 2016. This Agreement shall be incorporated into and made part of the Underlying Agreement (defined below).

## RECITALS

WHEREAS, the RECEIVER and Business Associate are parties to an agreement (the "Underlying Agreement") pursuant to which Business Associate provides certain services to the RECEIVER and, in connection with those services, the RECEIVER discloses to Business Associate certain protected health information ("PHI") that is subject to protection under the Health Insurance Portability and Accountability Act of 1996, as amended from time to time ("HIPAA"); and

WHEREAS, the Parties wish to set forth their understandings with regard to the use and disclosure of Protected Health Information ("PHI") by Business Associate in performance of its obligations in compliance with (1) the Privacy and Security Regulations; and (2) Subtitle D of the Health Information Technology for Economic and Clinical Health Act, Title XIII of Public Law 111-005 (42 U.S.C.A. Section 17921 et seq., subchapter III, Privacy).

NOW THEREFORE, for and in consideration of the recitals above and the mutual covenants and conditions herein contained, the RECEIVER and Business Associate enter into this Agreement to provide a full statement of their respective responsibilities.

## SECTION I - DEFINITIONS

1.1    Definitions.  Capitalized terms shall have the meanings given to them in the Privacy and Security Regulations and HITECH, which are incorporated herein by reference.

## SECTION II – OBLIGATIONS AND ACTIVITIES OF BUSINESS ASSOCIATE

2.1    Performance of Agreement.  Business Associate, its agents and employees (collectively referred to as "Business Associate") agrees to not use or further disclose PHI other than as permitted or required by this Agreement, the Underlying Agreement, or as Required by Law.

2.2    Safeguards for Protection of PHI.  Business Associate agrees to use reasonable safeguards to prevent use or disclosure of the PHI other than as provided for by this Agreement. Business Associate agrees to cooperate with the RECEIVER's efforts to mitigate, to the extent practicable, any harmful effects that arise from a use or disclosure of PHI by

Rev. 5/16

DocuSign Envelope ID: F3A7C748-DDF4-4132-9449-29B8289AAE65

Business Associate in violation of the requirements of this Agreement in accordance with 45 C.F.R. Section 164.514(d).

2.3     Electronic Health Information Security and Integrity.  Business Associate shall develop, implement, maintain and use appropriate administrative, technical and physical security measures consistent with and in compliance with the Security Regulations and HITECH to preserve the integrity, confidentiality and availability of all electronic PHI that it creates, receives, maintains or transmits on behalf of the RECEIVER.  Business Associate shall document and keep these security measures current in accordance with the Security Regulations and HITECH (including 42 U.S.C.A. Section 17931).

2.4     Protection of Exchanged Information in Electronic Transactions.  If Business Associate conducts any Standard Transaction for or on behalf of the RECEIVER, Business Associate shall comply, and shall require any subcontractor or agent conducting such Standard Transaction to comply, where applicable.

2.5     Reporting.  As described below, Business Associate shall report to the RECEIVER in writing (a) any use or disclosure of PHI not permitted under 45 C.F.R. Section 164, Subpart E, this Agreement, or by law, (b) any Security Incident (as defined below) of which it becomes aware and (c) any Breach of Unsecured PHI in accordance with HITECH, including 42 U.S.C.A. Section 17932; provided, however, that the Parties acknowledge and agree that this Section constitutes written notice by Business Associate to the RECEIVER of the ongoing existence and occurrence of attempted but Unsuccessful Security Incidents (as defined below).  "Unsuccessful Security Incidents" will include, but not be limited to, pings and other broadcast attacks on Business Associate's firewall, port scans, unsuccessful log-on attempts, denials of service and any combination of the above, so long as no such incident results in unauthorized access, use or disclosure of PHI.  For purposes of this Agreement, the term "Security Incident" means the successful unauthorized access, use, disclosure, modification or destruction of electronic PHI.

     (a)     Reporting Security Incidents or Improper Uses or Disclosures.  Business Associate shall make the report to the RECEIVER within three (3) business days after Business Associate learns of such unauthorized use or disclosure or Security Incident.  In accordance with 45 C.F.R. Section 164.404, any unauthorized use or disclosure of PHI that is a Breach of Unsecured PHI shall be reported as required under subsection (b) below.

     (b)     Notification of a Breach.  Pursuant to 45 C.F.R. Section 164.410, Business Associate shall provide written notice to the RECEIVER of any Breach of Unsecured PHI within three business days after Business Associate discovers the Breach.  Business Associate's report to the RECEIVER shall identify or describe: (i) the affected Individual whose Unsecured PHI has been or is reasonably believed to have been accessed, acquired or disclosed, if known; (ii) the incident, including the date of the Breach and the date of the discovery of the Breach, if known; (iii) the types of Unsecured PHI involved in the Breach; (iv) any specific steps the Individual should take to protect him or herself from potential harm related to the

DocuSign Envelope ID: F3A7C748-DDF4-4132-9449-29B8289AAE65

Breach; (v) what the Business Associate is doing to investigate the Breach, to mitigate losses and to protect against further Breaches; (vi) contact procedures for how the Individual can obtain further information from the Business Associate; and (vii) such other information as required by 45 C.F.R. Section 164.404(c).

2.6     Use of Subcontractors. Business Associate shall require each of its subcontractors or agents to whom Business Associate may provide PHI on behalf of the RECEIVER to agree to written contractual provisions that impose at least the same obligations to protect such PHI as are imposed on Business Associate by this Agreement, the Privacy and Security Regulations and HITECH.

2.7     Access to PHI. To the extent Business Associate possesses PHI in a Designated Record Set, Business Associate shall provide access, at the written request of the RECEIVER, to PHI in a Designated Record Set, to the RECEIVER to meet the requirements under Title 45, Section 164.524 of the C.F.R. or applicable state law and to meet the electronic transmission requirements for access to Electronic Health Records by Individuals in accordance with HITECH, including 42 U.S.C.A. Section 17935(e).

2.8     Amendments to PHI. To the extent Business Associate possesses PHI in a Designated Record Set, Business Associate agrees to make any amendments to PHI in a Designated Record Set that the RECEIVER directs or agrees to pursuant to 45 C.F.R. Section 164.526 at the request of the RECEIVER in the time and manner mutually agreed upon by the Parties.

2.9     Allowing the RECEIVER to Monitor Compliance. Business Associate will make its internal practices, books and records relating to the use and disclosure of PHI received from, or created or received by Business Associate on behalf of, the RECEIVER available to the Secretary for purposes of the Secretary determining the RECEIVER's compliance with the Privacy Rule and the Security Rule. Upon reasonable notice and prior written request, Business Associate agrees to make available to the RECEIVER during normal business hours, at Business Associate's place of business, such practices, books and records for the purpose of assessing Business Associate's compliance with the Privacy Rule or Security Rule; provided however, that such request does not compromise other proprietary or confidential information of Business Associate or its other customers and is subject to attorney-client and other applicable legal privileges.

2.10    Mitigation. Business Associate agrees to mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of PHI by Business Associate in violation of the requirements of this Agreement.

2.11    Marketing. Business Associate shall not receive direct or indirect payment for marketing communications which include PHI without authorization from the RECEIVER or the affected Individuals unless such communication is permitted under the Privacy Regulations and HITECH, including 42 U.S.C.A. Section 17936.

Rev. 5/16                          3

DocuSign Envelope ID: F3A7C748-DDF4-4132-9449-29B8289AAE65

2.12   <u>Sale of PHI.</u>  Business Associate shall not receive direct or indirect payment in exchange for any PHI including Electronic Health Records, unless Business Associate receives authorization from the RECEIVER or by all affected Individuals, except as permitted under HITECH including 42 U.S.C.A. Section 17935(d).

## SECTION III – PERMITTED USES AND DISCLOSURES BY BUSINESS ASSOCIATE

3.1   <u>General.</u>  Except as otherwise limited in this Agreement, Business Associate may use or disclose PHI to perform functions, activities, or services for, or on behalf of, the RECEIVER as specified in the Underlying Agreement, provided that such use or disclosure would not violate the Privacy Rule if done by the RECEIVER.

3.2   <u>Specific.</u>  Except as otherwise limited in this Agreement, Business Associate may use or disclose PHI for the proper management and administration of the Business Associate, provided that such disclosures are Required by Law, or are permitted by law provided that Business Associate obtains reasonable assurances from the person to whom the information is disclosed that it will remain confidential and will be used or further disclosed only as required by law or for the purpose for which it was disclosed to the person, and that the person will notify the Business Associate of any instances of which it is aware in which the confidentiality of the information has been breached.  Additionally, except as limited in this Agreement, Business Associate may use PHI to provide Data Aggregation Services to Receiver (to the extent detailed in the Underlying Agreement) as permitted by 45 C.F.R. Section 164.504(e)(2)(i)(B). Business Associate may also de-identify PHI in accordance with the standards set forth in 45 C.F.R. Section 164.514(b) and may use or disclose such de-identified data unless prohibited by applicable law.

3.3   <u>Access to PHI.</u>  Business Associate shall refer to the RECEIVER all requests by Individuals for information about, or accounting of, disclosures of PHI in accordance with 45 C.F.R. Section 164.524 and Section 2.7.

3.4   <u>Documentation of Disclosures.</u> Business Associate agrees to document disclosures of PHI, other than for treatment, payment or healthcare operations or disclosures that are incidental to another permissible disclosure, and information related to such disclosures  to the extent required for the RECEIVER to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 C.F.R. Section 164.528.

3.5   <u>Accounting of Disclosures.</u>  Business Associate agrees to provide to the RECEIVER, in a reasonable time and manner, but not later than ten (10) business days of the RECEIVER's written request, information collected in accordance with Section 3.4 of this Agreement, to the extent required to permit the RECEIVER to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 C.F.R. Section 164.528. Business Associate shall document all disclosures of PHI and information related to such disclosures as would be required for the RECEIVER to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with Title 45,

DocuSign Envelope ID: F3A7C748-DDF4-4132-9449-29B8289AAE65

Section 164.528 of the C.F.R., including PHI in Electronic Health Records in accordance with HITECH.  Business Associate agrees to provide the RECEIVER, information collected in accordance with this paragraph, to permit the RECEIVER to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with Title 45, Section 164.528 of the C.F.R. and HITECH, including 42 U.S.C.A. Section 17935(c) with respect to Electronic Health Records.  To the extent a request for an accounting relates to disclosures of PHI in Electronic Health Records by Business Associate, Business Associate shall provide the accounting directly to the RECEIVER upon request.

3.6 <u>Violations of Law.</u> Business Associate may use PHI to report violations of law to appropriate Federal and State authorities, consistent with 45 C.F.R. Section 164.502(j)(1).

## SECTION IV – OBLIGATIONS OF RECEIVER

4.1 <u>Notice of Privacy Practices.</u>  The RECEIVER shall provide Business Associate with the notice of privacy practices that [company name], has produced in accordance with 45 C.F.R. Section 164.520, as well as any changes to such notice that may affect Business Associate's use or disclosure of PHI no later than fifteen (15) days prior to the effective date of the change or limitation.

4.2 <u>Changes in Use of PHI.</u>  The RECEIVER shall provide Business Associate with any changes in, or revocation of, permission by Individual to use or disclose PHI, if such changes affect Business Associate's permitted or required uses and disclosures.  Business Associate shall have a reasonable period of time to act on such notice but shall be provided written notice no later than fifteen (15) days prior to the effective date of the change or limitation.

4.3 <u>Restrictions to Use of PHI.</u>  The RECEIVER shall notify Business Associate in writing no later than fifteen (15) days prior to the effective date of any restriction on the use or disclosure of PHI that Receiver has agreed to in accordance with 45 C.F.R. Section 164.522.  Business Associate shall comply with the terms of such restriction.

4.4 <u>RECEIVER Requests.</u>  The RECEIVER represents and warrants it shall not request Business Associate to use or disclose PHI in any manner that would not be permissible under the Privacy Rule if done by the RECEIVER.  In the event the RECEIVER requests Business Associate to use or disclose PHI in any manner, and such use or disclosure results in a violation or alleged violation of HIPAA or this Agreement, the RECEIVER will hold harmless Business Associate from all liabilities, costs and damages arising out of or in any way connected with such use or disclosure, including reasonable attorney's fees.

4.5 <u>RECEIVER Disclosures.</u>  The RECEIVER represents and warrants to Business Associate that the RECEIVER will not disclose any PHI to Business Associate unless the RECEIVER has obtained any consents and authorizations that may be required by law or otherwise necessary for such disclosure.

DocuSign Envelope ID: F3A7C748-DDF4-4132-9449-29B8289AAE65

## SECTION V - TERM/TERMINATION

5.1    <u>Term</u>. The term of this Agreement shall be effective as of the day and year first above written, and shall continue for as long as PHI is being exchanged by the RECEIVER and Business Associate.

5.2    <u>Termination for Cause</u>. Either party may terminate this Agreement and the Underlying Agreement for a material breach of this Agreement by the other party if such breach is not cured within thirty (30) days of receipt of written notice thereof. If neither termination nor cure are feasible, the RECEIVER shall report the violation to the Secretary.

5.3    <u>Termination After Repeated Violations</u>. Either party may terminate the Underlying Agreement if either party repeatedly violates this Agreement or any provision hereof, irrespective of whether, or how promptly, either party may remedy such violation after being notified of the same.

5.4    <u>Effect of Termination</u>. Upon termination of this Agreement, Business Associate shall destroy or return to the RECEIVER all PHI provided by the RECEIVER to the Business Associate or created or received by the Business Associate on behalf of the RECEIVER. If it is infeasible for Business Associate to return or destroy PHI upon termination of this Agreement, Business Associate will maintain the protection required under this Agreement of the PHI for the period of time required under applicable law, or in accordance with Business Associate's internal record retention schedule as in effect from time to time, at which time Business Associate shall destroy the PHI in accordance with acceptable business procedures. This provision shall also apply to PHI in the possession of subcontractors or agents of the Business Associate, and Business Associate shall be fully responsible for such compliance.

5.5    <u>Survival</u>. The rights and obligations of Business Associate under Section 5.4 of this Agreement shall survive the termination of this Agreement.

## SECTION VI - BREACH COST REIMBURSEMENT

6.1    <u>Breach Cost Reimbursement.</u> In the event of a Breach caused solely by Business Associate and the HIPAA Regulations require notice to individuals pursuant to 45 C.F.R. Sections 164.404 and 164.406, Business Associate agrees to reimburse the RECEIVER for the reasonable and substantiated costs related to the following: providing notifications to affected individuals, the media, or the Secretary, providing credit monitoring services to the affected individuals, if appropriate, for up to one (1) year, any fines and penalties assessed against the RECEIVER directly attributable to Business Associate's Breach, investigation costs, mitigation efforts required under the HIPAA Regulations, and attorney's fees incurred directly as a result of the Breach (but not in connection with any third-party claims).

DocuSign Envelope ID: F3A7C748-DDF4-4132-9449-29B8289AAE65

## SECTION VII - MISCELLANEOUS

7.1    Construction.  This Agreement shall be construed as broadly as necessary to implement and comply with HIPAA and the HIPAA regulations.  The parties agree that any ambiguity in this Agreement shall be resolved in favor of a meaning that complies and is consistent with HIPAA and HIPAA regulations.  A reference in this Agreement to a section in the Privacy Rule means the section as in effect or as amended.  Any ambiguity in this Agreement shall be resolved to permit the Parties to comply with the Privacy Rule.

7.2    Notice.  All notices and other communications required or permitted pursuant to this Agreement shall be in writing, addressed to the party at the address set forth at the end of this Agreement, or to such other address as either party may designate in writing from time to time.  All notices and other communications shall be mailed by registered or certified mail, return receipt requested, postage pre-paid, or transmitted by hand delivery or telegram.  All notices shall be effective as of the date of delivery of personal notice or on the date of receipt, whichever is applicable.

7.3    Modification of this Agreement.  The parties recognize that this Agreement may need to be modified from time to time to ensure consistency with amendments to and changes in applicable federal and state laws and regulations, including, but not limited to, HIPAA.  The parties agree to execute any additional amendments to this Agreement reasonably necessary for each party to comply with HIPAA, including any requirements related to a Chain of Trust Agreement between the parties pursuant to the HIPAA security standards.  This Agreement shall not be waived or altered, in whole or in part, except in writing signed by the parties.

7.4    Transferability.  This Agreement may not be assigned by either party without the express written consent of the other.

7.5    Governing Law and Venue.  This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of Florida, without giving effect to its conflict of laws provisions.

7.6    Binding Effect.  This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective permitted successors and assigns.

7.7    Execution.  This Agreement may be executed in multiple counterparts, each of which shall constitute an original and all of which shall constitute but one Agreement.

7.8    Gender and Number.  The use of the masculine, feminine or neutral genders, and the use of the singular and plural, shall not be given an effect of any exclusion or limitation herein.  The use of the word "person" or "party" shall mean and include any individual, trust, corporation, partnership or other entity.

DocuSign Envelope ID: F3A7C748-DDF4-4132-9449-29B8289AAE65

7.9    <u>Priority of Agreement</u>.  If any portion of this Agreement is inconsistent with the terms of the Underlying Agreement, the terms of this Agreement shall prevail.  Except as set forth above, the remaining provisions of the Underlying Agreement are ratified in their entirety.

7.10    <u>Entire Agreement.</u>  This Agreement constitutes the entire Agreement between the parties concerning the subject herein, and supersedes all prior oral or written agreements between the parties on same.

7.11    <u>Beneficiaries.</u> The parties agree that there shall be no incidental or intended third-party beneficiaries under this Agreement, nor shall any other person on entity have rights arising from the same.

IN WITNESS WHEREOF, the parties have hereunto set their hands effective the day and year first above written.

Rev. 5/16                                     8

DocuSign Envelope ID: F3A7C748-DDF4-4132-9449-29B8289AAE65

**The RECEIVER**

Signature: _____

Name: Mary Linzee Branham

Title: Assistant Division Director

Date: June 1, 2016

Address: 2020 Capital Circle, SE
         Alexander Building, 3rd Floor
         Tallahassee, FL  32301

**BUSINESS ASSOCIATE**

Signature: Mayra Ruiz

Name: _____

Title: Managing Member

Date: 6/2/2016

Address: 5000 SW 75 Ave Suite 400
         Miami, FL. 33155
         _____
         _____

Rev. 5/16                    9

**The RECEIVER**
Signature: _____
Name: Mary Linzee Branham
Title:  Assistant Division Director
Date:  June 1, 2016 _____

Address: 2020 Capital Circle, SE____
         Alexander Building, 3rd Floor
         Tallahassee, FL  32301_____

**BUSINESS ASSOCIATE**
Signature: _____
Name: _____
Title: _____
Date: _____

Address: _____
         _____
         _____

DocuSign Envelope ID: 384ACFBA-FEAB-4A68-A5A0-37587592F57C

## BUSINESS ASSOCIATE AGREEMENT

THIS BUSINESS ASSOCIATE AGREEMENT (the "Agreement") is entered into by and between the Florida Department of Financial Services, Division of Rehabilitation and Liquidation (the "RECEIVER"), as the RECEIVER of **Florida Healthcare Plus, Inc.**, pursuant to the court Order entered in Leon County, Florida Circuit Court Case No.: 2014-CA-2762, and **MSP Recovery LLC** ("Business Associate"), effective the 1st day of June, 2016. This Agreement shall be incorporated into and made part of the Underlying Agreement (defined below).

## RECITALS

WHEREAS, the RECEIVER and Business Associate are parties to an agreement (the "Underlying Agreement") pursuant to which Business Associate provides certain services to the RECEIVER and, in connection with those services, the RECEIVER discloses to Business Associate certain protected health information ("PHI") that is subject to protection under the Health Insurance Portability and Accountability Act of 1996, as amended from time to time ("HIPAA"); and

WHEREAS, the Parties wish to set forth their understandings with regard to the use and disclosure of Protected Health Information ("PHI") by Business Associate in performance of its obligations in compliance with (1) the Privacy and Security Regulations; and (2) Subtitle D of the Health Information Technology for Economic and Clinical Health Act, Title XIII of Public Law 111-005 (42 U.S.C.A. Section 17921 et seq., subchapter III, Privacy).

NOW THEREFORE, for and in consideration of the recitals above and the mutual covenants and conditions herein contained, the RECEIVER and Business Associate enter into this Agreement to provide a full statement of their respective responsibilities.

## SECTION I - DEFINITIONS

1.1   Definitions.  Capitalized terms shall have the meanings given to them in the Privacy and Security Regulations and HITECH, which are incorporated herein by reference.

## SECTION II – OBLIGATIONS AND ACTIVITIES OF BUSINESS ASSOCIATE

2.1   Performance of Agreement.  Business Associate, its agents and employees (collectively referred to as "Business Associate") agrees to not use or further disclose PHI other than as permitted or required by this Agreement, the Underlying Agreement, or as Required by Law.

2.2   Safeguards for Protection of PHI.  Business Associate agrees to use reasonable safeguards to prevent use or disclosure of the PHI other than as provided for by this Agreement. Business Associate agrees to cooperate with the RECEIVER's efforts to mitigate, to the extent practicable, any harmful effects that arise from a use or disclosure of PHI by

Rev. 5/16

DocuSign Envelope ID: 384ACFBA-FEAB-4A68-A5A0-37587592F57C

Business Associate in violation of the requirements of this Agreement in accordance with 45 C.F.R. Section 164.514(d).

2.3    Electronic Health Information Security and Integrity.    Business Associate shall develop, implement, maintain and use appropriate administrative, technical and physical security measures consistent with and in compliance with the Security Regulations and HITECH to preserve the integrity, confidentiality and availability of all electronic PHI that it creates, receives, maintains or transmits on behalf of the RECEIVER.    Business Associate shall document and keep these security measures current in accordance with the Security Regulations and HITECH (including 42 U.S.C.A. Section 17931).

2.4    Protection of Exchanged Information in Electronic Transactions.    If Business Associate conducts any Standard Transaction for or on behalf of the RECEIVER, Business Associate shall comply, and shall require any subcontractor or agent conducting such Standard Transaction to comply, where applicable.

2.5    Reporting.    As described below, Business Associate shall report to the RECEIVER in writing (a) any use or disclosure of PHI not permitted under 45 C.F.R. Section 164, Subpart E, this Agreement, or by law, (b) any Security Incident (as defined below) of which it becomes aware and (c) any Breach of Unsecured PHI in accordance with HITECH, including 42 U.S.C.A. Section 17932; provided, however, that the Parties acknowledge and agree that this Section constitutes written notice by Business Associate to the RECEIVER of the ongoing existence and occurrence of attempted but Unsuccessful Security Incidents (as defined below).  "Unsuccessful Security Incidents" will include, but not be limited to, pings and other broadcast attacks on Business Associate's firewall, port scans, unsuccessful log-on attempts, denials of service and any combination of the above, so long as no such incident results in unauthorized access, use or disclosure of PHI.  For purposes of this Agreement, the term "Security Incident" means the successful unauthorized access, use, disclosure, modification or destruction of electronic PHI.

(a)    Reporting Security Incidents or Improper Uses or Disclosures.    Business Associate shall make the report to the RECEIVER within three (3) business days after Business Associate learns of such unauthorized use or disclosure or Security Incident.  In accordance with 45 C.F.R. Section 164.404, any unauthorized use or disclosure of PHI that is a Breach of Unsecured PHI shall be reported as required under subsection (b) below.

(b)    Notification of a Breach.    Pursuant to 45 C.F.R. Section 164.410, Business Associate shall provide written notice to the RECEIVER of any Breach of Unsecured PHI within three business days after Business Associate discovers the Breach.  Business Associate's report to the RECEIVER shall identify or describe: (i) the affected Individual whose Unsecured PHI has been or is reasonably believed to have been accessed, acquired or disclosed, if known; (ii) the incident, including the date of the Breach and the date of the discovery of the Breach, if known; (iii) the types of Unsecured PHI involved in the Breach; (iv) any specific steps the Individual should take to protect him or herself from potential harm related to the

DocuSign Envelope ID: 384ACFBA-FEAB-4A68-A5A0-37587592F57C

Breach; (v) what the Business Associate is doing to investigate the Breach, to mitigate losses and to protect against further Breaches; (vi) contact procedures for how the Individual can obtain further information from the Business Associate; and (vii) such other information as required by 45 C.F.R. Section 164.404(c).

2.6   Use of Subcontractors.  Business Associate shall require each of its subcontractors or agents to whom Business Associate may provide PHI on behalf of the RECEIVER to agree to written contractual provisions that impose at least the same obligations to protect such PHI as are imposed on Business Associate by this Agreement, the Privacy and Security Regulations and HITECH.

2.7   Access to PHI.  To the extent Business Associate possesses PHI in a Designated Record Set, Business Associate shall provide access, at the written request of the RECEIVER, to PHI in a Designated Record Set, to the RECEIVER to meet the requirements under Title 45, Section 164.524 of the C.F.R. or applicable state law and to meet the electronic transmission requirements for access to Electronic Health Records by Individuals in accordance with HITECH, including 42 U.S.C.A. Section 17935(e).

2.8   Amendments to PHI.  To the extent Business Associate possesses PHI in a Designated Record Set, Business Associate agrees to make any amendments to PHI in a Designated Record Set that the RECEIVER directs or agrees to pursuant to 45 C.F.R. Section 164.526 at the request of the RECEIVER in the time and manner mutually agreed upon by the Parties.

2.9   Allowing the RECEIVER to Monitor Compliance. Business Associate will make its internal practices, books and records relating to the use and disclosure of PHI received from, or created or received by Business Associate on behalf of, the RECEIVER available to the Secretary for purposes of the Secretary determining the RECEIVER's compliance with the Privacy Rule and the Security Rule. Upon reasonable notice and prior written request, Business Associate agrees to make available to the RECEIVER during normal business hours, at Business Associate's place of business, such practices, books and records for the purpose of assessing Business Associate's compliance with the Privacy Rule or Security Rule; provided however, that such request does not compromise other proprietary or confidential information of Business Associate or its other customers and is subject to attorney-client and other applicable legal privileges.

2.10   Mitigation.  Business Associate agrees to mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of PHI by Business Associate in violation of the requirements of this Agreement.

2.11   Marketing.  Business Associate shall not receive direct or indirect payment for marketing communications which include PHI without authorization from the RECEIVER or the affected Individuals unless such communication is permitted under the Privacy Regulations and HITECH, including 42 U.S.C.A. Section 17936.

DocuSign Envelope ID: 384ACFBA-FEAB-4A68-A5A0-37587592F57C

2.12    Sale of PHI. Business Associate shall not receive direct or indirect payment in exchange for any PHI including Electronic Health Records, unless Business Associate receives authorization from the RECEIVER or by all affected Individuals, except as permitted under HITECH including 42 U.S.C.A. Section 17935(d).


**SECTION III – PERMITTED USES AND DISCLOSURES BY BUSINESS ASSOCIATE**

3.1    General.  Except as otherwise limited in this Agreement, Business Associate may use or disclose PHI to perform functions, activities, or services for, or on behalf of, the RECEIVER as specified in the Underlying Agreement, provided that such use or disclosure would not violate the Privacy Rule if done by the RECEIVER.

3.2    Specific.  Except as otherwise limited in this Agreement, Business Associate may use or disclose PHI for the proper management and administration of the Business Associate, provided that such disclosures are Required by Law, or are permitted by law provided that Business Associate obtains reasonable assurances from the person to whom the information is disclosed that it will remain confidential and will be used or further disclosed only as required by law or for the purpose for which it was disclosed to the person, and that the person will notify the Business Associate of any instances of which it is aware in which the confidentiality of the information has been breached.  Additionally, except as limited in this Agreement, Business Associate may use PHI to provide Data Aggregation Services to Receiver (to the extent detailed in the Underlying Agreement) as permitted by 45 C.F.R. Section 164.504(e)(2)(i)(B). Business Associate may also de-identify PHI in accordance with the standards set forth in 45 C.F.R. Section 164.514(b) and may use or disclose such de-identified data unless prohibited by applicable law.

3.3    Access to PHI.  Business Associate shall refer to the RECEIVER all requests by Individuals for information about, or accounting of, disclosures of PHI in accordance with 45 C.F.R. Section 164.524 and Section 2.7.

3.4    Documentation of Disclosures. Business Associate agrees to document disclosures of PHI, other than for treatment, payment or healthcare operations or disclosures that are incidental to another permissible disclosure, and information related to such disclosures  to the extent required for the RECEIVER to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 C.F.R. Section 164.528.

3.5    Accounting of Disclosures.  Business Associate agrees to provide to the RECEIVER, in a reasonable time and manner, but not later than ten (10) business days of the RECEIVER's written request, information collected in accordance with Section 3.4 of this Agreement, to the extent required to permit the RECEIVER to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 C.F.R. Section 164.528. Business Associate shall document all disclosures of PHI and information related to such disclosures as would be required for the RECEIVER to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with Title 45,

DocuSign Envelope ID: 384ACFBA-FEAB-4A68-A5A0-37587592F57C

Section 164.528 of the C.F.R., including PHI in Electronic Health Records in accordance with HITECH.  Business Associate agrees to provide the RECEIVER, information collected in accordance with this paragraph, to permit the RECEIVER to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with Title 45, Section 164.528 of the C.F.R. and HITECH, including 42 U.S.C.A. Section 17935(c) with respect to Electronic Health Records.  To the extent a request for an accounting relates to disclosures of PHI in Electronic Health Records by Business Associate, Business Associate shall provide the accounting directly to the RECEIVER upon request.

3.6    <u>Violations of Law.</u> Business Associate may use PHI to report violations of law to appropriate Federal and State authorities, consistent with 45 C.F.R. Section 164.502(j)(1).

## SECTION IV – OBLIGATIONS OF RECEIVER

4.1    <u>Notice of Privacy Practices.</u>  The RECEIVER shall provide Business Associate with the notice of privacy practices that [company name], has produced in accordance with 45 C.F.R. Section 164.520, as well as any changes to such notice that may affect Business Associate's use or disclosure of PHI no later than fifteen (15) days prior to the effective date of the change or limitation.

4.2    <u>Changes in Use of PHI.</u>  The RECEIVER shall provide Business Associate with any changes in, or revocation of, permission by Individual to use or disclose PHI, if such changes affect Business Associate's permitted or required uses and disclosures.  Business Associate shall have a reasonable period of time to act on such notice but shall be provided written notice no later than fifteen (15) days prior to the effective date of the change or limitation.

4.3    <u>Restrictions to Use of PHI.</u>  The RECEIVER shall notify Business Associate in writing no later than fifteen (15) days prior to the effective date of any restriction on the use or disclosure of PHI that Receiver has agreed to in accordance with 45 C.F.R. Section 164.522.  Business Associate shall comply with the terms of such restriction.

4.4    <u>RECEIVER Requests.</u>  The RECEIVER represents and warrants it shall not request Business Associate to use or disclose PHI in any manner that would not be permissible under the Privacy Rule if done by the RECEIVER.  In the event the RECEIVER requests Business Associate to use or disclose PHI in any manner, and such use or disclosure results in a violation or alleged violation of HIPAA or this Agreement, the RECEIVER will hold harmless Business Associate from all liabilities, costs and damages arising out of or in any way connected with such use or disclosure, including reasonable attorney's fees.

4.5    <u>RECEIVER Disclosures.</u>  The RECEIVER represents and warrants to Business Associate that the RECEIVER will not disclose any PHI to Business Associate unless the RECEIVER has obtained any consents and authorizations that may be required by law or otherwise necessary for such disclosure.

DocuSign Envelope ID: 384ACFBA-FEAB-4A68-A5A0-37587592F57C

## SECTION V - TERM/TERMINATION

5.1     <u>Term</u>.  The term of this Agreement shall be effective as of the day and year first above written, and shall continue for as long as PHI is being exchanged by the RECEIVER and Business Associate.

5.2     <u>Termination for Cause</u>. Either party may terminate this Agreement and the Underlying Agreement for a material breach of this Agreement by the other party if such breach is not cured within thirty (30) days of receipt of written notice thereof.  If neither termination nor cure are feasible, the RECEIVER shall report the violation to the Secretary.

5.3     <u>Termination After Repeated Violations</u>.   Either party may terminate the Underlying Agreement if either party repeatedly violates this Agreement or any provision hereof, irrespective of whether, or how promptly, either party may remedy such violation after being notified of the same.

5.4     <u>Effect of Termination</u>. Upon termination of this Agreement, Business Associate shall destroy or return to the RECEIVER all PHI provided by the RECEIVER to the Business Associate or created or received by the Business Associate on behalf of the RECEIVER. If it is infeasible for Business Associate to return or destroy PHI upon termination of this Agreement, Business Associate will maintain the protection required under this Agreement of the PHI for the period of time required under applicable law, or in accordance with Business Associate's internal record retention schedule as in effect from time to time, at which time Business Associate shall destroy the PHI in accordance with acceptable business procedures.   This provision shall also apply to PHI in the possession of subcontractors or agents of the Business Associate, and Business Associate shall be fully responsible for such compliance.

5.5     <u>Survival</u>.  The rights and obligations of Business Associate under Section 5.4 of this Agreement shall survive the termination of this Agreement.

## SECTION VI - BREACH COST REIMBURSEMENT

6.1     <u>Breach Cost Reimbursement.</u> In the event of a Breach caused solely by Business Associate and the HIPAA Regulations require notice to individuals pursuant to 45 C.F.R. Sections 164.404 and 164.406, Business Associate agrees to reimburse the RECEIVER for the reasonable and substantiated costs related to the following: providing notifications to affected individuals, the media, or the Secretary, providing credit monitoring services to the affected individuals, if appropriate, for up to one (1) year, any fines and penalties assessed against the RECEIVER directly attributable to Business Associate's Breach, investigation costs, mitigation efforts required under the HIPAA Regulations, and attorney's fees incurred directly as a result of the Breach (but not in connection with any third-party claims).

DocuSign Envelope ID: 384ACFBA-FEAB-4A68-A5A0-37587592F57C

## SECTION VII - MISCELLANEOUS

7.1    Construction.  This Agreement shall be construed as broadly as necessary to implement and comply with HIPAA and the HIPAA regulations.  The parties agree that any ambiguity in this Agreement shall be resolved in favor of a meaning that complies and is consistent with HIPAA and HIPAA regulations.  A reference in this Agreement to a section in the Privacy Rule means the section as in effect or as amended.  Any ambiguity in this Agreement shall be resolved to permit the Parties to comply with the Privacy Rule.

7.2    Notice.  All notices and other communications required or permitted pursuant to this Agreement shall be in writing, addressed to the party at the address set forth at the end of this Agreement, or to such other address as either party may designate in writing from time to time.  All notices and other communications shall be mailed by registered or certified mail, return receipt requested, postage pre-paid, or transmitted by hand delivery or telegram.  All notices shall be effective as of the date of delivery of personal notice or on the date of receipt, whichever is applicable.

7.3    Modification of this Agreement.  The parties recognize that this Agreement may need to be modified from time to time to ensure consistency with amendments to and changes in applicable federal and state laws and regulations, including, but not limited to, HIPAA. The parties agree to execute any additional amendments to this Agreement reasonably necessary for each party to comply with HIPAA, including any requirements related to a Chain of Trust Agreement between the parties pursuant to the HIPAA security standards. This Agreement shall not be waived or altered, in whole or in part, except in writing signed by the parties.

7.4    Transferability.  This Agreement may not be assigned by either party without the express written consent of the other.

7.5    Governing Law and Venue.  This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of Florida, without giving effect to its conflict of laws provisions.

7.6    Binding Effect.  This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective permitted successors and assigns.

7.7    Execution.  This Agreement may be executed in multiple counterparts, each of which shall constitute an original and all of which shall constitute but one Agreement.

7.8    Gender and Number.  The use of the masculine, feminine or neutral genders, and the use of the singular and plural, shall not be given an effect of any exclusion or limitation herein. The use of the word "person" or "party" shall mean and include any individual, trust, corporation, partnership or other entity.

DocuSign Envelope ID: 384ACFBA-FEAB-4A68-A5A0-37587592F57C

7.9    <u>Priority of Agreement</u>.  If any portion of this Agreement is inconsistent with the terms of the Underlying Agreement, the terms of this Agreement shall prevail.  Except as set forth above, the remaining provisions of the Underlying Agreement are ratified in their entirety.

7.10    <u>Entire Agreement.</u>  This Agreement constitutes the entire Agreement between the parties concerning the subject herein, and supersedes all prior oral or written agreements between the parties on same.

7.11    <u>Beneficiaries.</u> The parties agree that there shall be no incidental or intended third-party beneficiaries under this Agreement, nor shall any other person on entity have rights arising from the same.

IN WITNESS WHEREOF, the parties have hereunto set their hands effective the day and year first above written.

DocuSign Envelope ID: 384ACFBA-FEAB-4A68-A5A0-37587592F57C

**The RECEIVER**

Signature: _____

Name: <u>Mary Linzee Branham</u>

Title: <u>Asst. Division Director</u>

Date: <u>June 1, 2016</u>

Address: <u>2020 Capital Circle, SE</u>
             <u>Alexander Building, 3rd Floor</u>
             <u>Tallahassee, FL  32301</u>

**BUSINESS ASSOCIATE**

Signature: <u>Walter Lista</u>

Name: _____

Title: <u>Executive Vice President</u>

Date: <u>6/2/2016</u>

Address: <u>5000 SW 75 Ave Suite 400</u>
            <u>Miami, FL. 33155</u>

DocuSigned by:

*walter Lista*

AA9C683CD397498...

Rev. 5/16

9

The RECEIVER,
Signature: _____
Name: Mary Linzee Branham
Title:  Asst. Division Director
Date:   June 1, 2016 _____

Address: 2020 Capital Circle, SE
         Alexander Building, 3rd Floor
         Tallahassee, FL  32301 _____

**BUSINESS ASSOCIATE**
Signature: _____
Name: _____
Title:  _____
Date:  _____

Address: _____
        _____
        _____

Rev. 5/16                              9

DocuSign Envelope ID: 1B077CEF-2863-4D90-913A-D57384D4C6EF

## BUSINESS ASSOCIATE AGREEMENT

THIS BUSINESS ASSOCIATE AGREEMENT (the "Agreement") is entered into by and between the Florida Department of Financial Services, Division of Rehabilitation and Liquidation (the "RECEIVER"), as the RECEIVER of **Florida Healthcare Plus, Inc.**, pursuant to the court Order entered in Leon County, Florida Circuit Court Case No.: 2014-CA-2762, and **MSP Recovery Services, LLC** ("Business Associate"), effective the 1st day of June, 2016. This Agreement shall be incorporated into and made part of the Underlying Agreement (defined below).

### RECITALS

WHEREAS, the RECEIVER and Business Associate are parties to an agreement (the "Underlying Agreement") pursuant to which Business Associate provides certain services to the RECEIVER and, in connection with those services, the RECEIVER discloses to Business Associate certain protected health information ("PHI") that is subject to protection under the Health Insurance Portability and Accountability Act of 1996, as amended from time to time ("HIPAA"); and

WHEREAS, the Parties wish to set forth their understandings with regard to the use and disclosure of Protected Health Information ("PHI") by Business Associate in performance of its obligations in compliance with (1) the Privacy and Security Regulations; and (2) Subtitle D of the Health Information Technology for Economic and Clinical Health Act, Title XIII of Public Law 111-005 (42 U.S.C.A. Section 17921 et seq., subchapter III, Privacy).

NOW THEREFORE, for and in consideration of the recitals above and the mutual covenants and conditions herein contained, the RECEIVER and Business Associate enter into this Agreement to provide a full statement of their respective responsibilities.

### SECTION I - DEFINITIONS

1.1     Definitions.  Capitalized terms shall have the meanings given to them in the Privacy and Security Regulations and HITECH, which are incorporated herein by reference.

### SECTION II – OBLIGATIONS AND ACTIVITIES OF BUSINESS ASSOCIATE

2.1     Performance of Agreement.  Business Associate, its agents and employees (collectively referred to as "Business Associate") agrees to not use or further disclose PHI other than as permitted or required by this Agreement, the Underlying Agreement, or as Required by Law.

2.2     Safeguards for Protection of PHI.  Business Associate agrees to use reasonable safeguards to prevent use or disclosure of the PHI other than as provided for by this Agreement. Business Associate agrees to cooperate with the RECEIVER's efforts to mitigate, to the extent practicable, any harmful effects that arise from a use or disclosure of PHI by

Rev. 5/16

DocuSign Envelope ID: 1B077CEF-2863-4D90-913A-D57384D4C6EF

Business Associate in violation of the requirements of this Agreement in accordance with 45 C.F.R. Section 164.514(d).

2.3   Electronic Health Information Security and Integrity.  Business Associate shall develop, implement, maintain and use appropriate administrative, technical and physical security measures consistent with and in compliance with the Security Regulations and HITECH to preserve the integrity, confidentiality and availability of all electronic PHI that it creates, receives, maintains or transmits on behalf of the RECEIVER.  Business Associate shall document and keep these security measures current in accordance with the Security Regulations and HITECH (including 42 U.S.C.A. Section 17931).

2.4   Protection of Exchanged Information in Electronic Transactions.  If Business Associate conducts any Standard Transaction for or on behalf of the RECEIVER, Business Associate shall comply, and shall require any subcontractor or agent conducting such Standard Transaction to comply, where applicable.

2.5   Reporting.  As described below, Business Associate shall report to the RECEIVER in writing (a) any use or disclosure of PHI not permitted under 45 C.F.R. Section 164, Subpart E, this Agreement, or by law, (b) any Security Incident (as defined below) of which it becomes aware and (c) any Breach of Unsecured PHI in accordance with HITECH, including 42 U.S.C.A. Section 17932; provided, however, that the Parties acknowledge and agree that this Section constitutes written notice by Business Associate to the RECEIVER of the ongoing existence and occurrence of attempted but Unsuccessful Security Incidents (as defined below).  "Unsuccessful Security Incidents" will include, but not be limited to, pings and other broadcast attacks on Business Associate's firewall, port scans, unsuccessful log-on attempts, denials of service and any combination of the above, so long as no such incident results in unauthorized access, use or disclosure of PHI.  For purposes of this Agreement, the term "Security Incident" means the successful unauthorized access, use, disclosure, modification or destruction of electronic PHI.

(a)   Reporting Security Incidents or Improper Uses or Disclosures.  Business Associate shall make the report to the RECEIVER within three (3) business days after Business Associate learns of such unauthorized use or disclosure or Security Incident.  In accordance with 45 C.F.R. Section 164.404, any unauthorized use or disclosure of PHI that is a Breach of Unsecured PHI shall be reported as required under subsection (b) below.

(b)   Notification of a Breach.  Pursuant to 45 C.F.R. Section 164.410, Business Associate shall provide written notice to the RECEIVER of any Breach of Unsecured PHI within three business days after Business Associate discovers the Breach.  Business Associate's report to the RECEIVER shall identify or describe: (i) the affected Individual whose Unsecured PHI has been or is reasonably believed to have been accessed, acquired or disclosed, if known; (ii) the incident, including the date of the Breach and the date of the discovery of the Breach, if known; (iii) the types of Unsecured PHI involved in the Breach; (iv) any specific steps the Individual should take to protect him or herself from potential harm related to the

DocuSign Envelope ID: 1B077CEF-2863-4D90-913A-D57384D4C6EF

Breach; (v) what the Business Associate is doing to investigate the Breach, to mitigate losses and to protect against further Breaches; (vi) contact procedures for how the Individual can obtain further information from the Business Associate; and (vii) such other information as required by 45 C.F.R. Section 164.404(c).

2.6    Use of Subcontractors.  Business Associate shall require each of its subcontractors or agents to whom Business Associate may provide PHI on behalf of the RECEIVER to agree to written contractual provisions that impose at least the same obligations to protect such PHI as are imposed on Business Associate by this Agreement, the Privacy and Security Regulations and HITECH.

2.7    Access to PHI.  To the extent Business Associate possesses PHI in a Designated Record Set, Business Associate shall provide access, at the written request of the RECEIVER, to PHI in a Designated Record Set, to the RECEIVER to meet the requirements under Title 45, Section 164.524 of the C.F.R. or applicable state law and to meet the electronic transmission requirements for access to Electronic Health Records by Individuals in accordance with HITECH, including 42 U.S.C.A. Section 17935(e).

2.8    Amendments to PHI.  To the extent Business Associate possesses PHI in a Designated Record Set, Business Associate agrees to make any amendments to PHI in a Designated Record Set that the RECEIVER directs or agrees to pursuant to 45 C.F.R. Section 164.526 at the request of the RECEIVER in the time and manner mutually agreed upon by the Parties.

2.9    Allowing the RECEIVER to Monitor Compliance. Business Associate will make its internal practices, books and records relating to the use and disclosure of PHI received from, or created or received by Business Associate on behalf of, the RECEIVER available to the Secretary for purposes of the Secretary determining the RECEIVER's compliance with the Privacy Rule and the Security Rule. Upon reasonable notice and prior written request, Business Associate agrees to make available to the RECEIVER during normal business hours, at Business Associate's place of business, such practices, books and records for the purpose of assessing Business Associate's compliance with the Privacy Rule or Security Rule; provided however, that such request does not compromise other proprietary or confidential information of Business Associate or its other customers and is subject to attorney-client and other applicable legal privileges.

2.10    Mitigation.  Business Associate agrees to mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of PHI by Business Associate in violation of the requirements of this Agreement.

2.11    Marketing.  Business Associate shall not receive direct or indirect payment for marketing communications which include PHI without authorization from the RECEIVER or the affected Individuals unless such communication is permitted under the Privacy Regulations and HITECH, including 42 U.S.C.A. Section 17936.

Rev. 5/16                    3

DocuSign Envelope ID: 1B077CEF-2863-4D90-913A-D57384D4C6EF

2.12    <u>Sale of PHI.</u>  Business Associate shall not receive direct or indirect payment in exchange for any PHI including Electronic Health Records, unless Business Associate receives authorization from the RECEIVER or by all affected Individuals, except as permitted under HITECH including 42 U.S.C.A. Section 17935(d).

## SECTION III – PERMITTED USES AND DISCLOSURES BY BUSINESS ASSOCIATE

3.1    <u>General.</u>  Except as otherwise limited in this Agreement, Business Associate may use or disclose PHI to perform functions, activities, or services for, or on behalf of, the RECEIVER as specified in the Underlying Agreement, provided that such use or disclosure would not violate the Privacy Rule if done by the RECEIVER.

3.2    <u>Specific.</u>  Except as otherwise limited in this Agreement, Business Associate may use or disclose PHI for the proper management and administration of the Business Associate, provided that such disclosures are Required by Law, or are permitted by law provided that Business Associate obtains reasonable assurances from the person to whom the information is disclosed that it will remain confidential and will be used or further disclosed only as required by law or for the purpose for which it was disclosed to the person, and that the person will notify the Business Associate of any instances of which it is aware in which the confidentiality of the information has been breached.  Additionally, except as limited in this Agreement, Business Associate may use PHI to provide Data Aggregation Services to Receiver (to the extent detailed in the Underlying Agreement) as permitted by 45 C.F.R. Section 164.504(e)(2)(i)(B). Business Associate may also de-identify PHI in accordance with the standards set forth in 45 C.F.R. Section 164.514(b) and may use or disclose such de-identified data unless prohibited by applicable law.

3.3    <u>Access to PHI.</u>  Business Associate shall refer to the RECEIVER all requests by Individuals for information about, or accounting of, disclosures of PHI in accordance with 45 C.F.R. Section 164.524 and Section 2.7.

3.4    <u>Documentation of Disclosures.</u> Business Associate agrees to document disclosures of PHI, other than for treatment, payment or healthcare operations or disclosures that are incidental to another permissible disclosure, and information related to such disclosures  to the extent required for the RECEIVER to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 C.F.R. Section 164.528.

3.5    <u>Accounting of Disclosures.</u>  Business Associate agrees to provide to the RECEIVER, in a reasonable time and manner, but not later than ten (10) business days of the RECEIVER's written request, information collected in accordance with Section 3.4 of this Agreement, to the extent required to permit the RECEIVER to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 C.F.R. Section 164.528. Business Associate shall document all disclosures of PHI and information related to such disclosures as would be required for the RECEIVER to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with Title 45,

DocuSign Envelope ID: 1B077CEF-2863-4D90-913A-D57384D4C6EF

Section 164.528 of the C.F.R., including PHI in Electronic Health Records in accordance with HITECH. Business Associate agrees to provide the RECEIVER, information collected in accordance with this paragraph, to permit the RECEIVER to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with Title 45, Section 164.528 of the C.F.R. and HITECH, including 42 U.S.C.A. Section 17935(c) with respect to Electronic Health Records. To the extent a request for an accounting relates to disclosures of PHI in Electronic Health Records by Business Associate, Business Associate shall provide the accounting directly to the RECEIVER upon request.

3.6   Violations of Law. Business Associate may use PHI to report violations of law to appropriate Federal and State authorities, consistent with 45 C.F.R. Section 164.502(j)(1).

## SECTION IV – OBLIGATIONS OF RECEIVER

4.1   Notice of Privacy Practices. The RECEIVER shall provide Business Associate with the notice of privacy practices that [company name], has produced in accordance with 45 C.F.R. Section 164.520, as well as any changes to such notice that may affect Business Associate's use or disclosure of PHI no later than fifteen (15) days prior to the effective date of the change or limitation.

4.2   Changes in Use of PHI. The RECEIVER shall provide Business Associate with any changes in, or revocation of, permission by Individual to use or disclose PHI, if such changes affect Business Associate's permitted or required uses and disclosures. Business Associate shall have a reasonable period of time to act on such notice but shall be provided written notice no later than fifteen (15) days prior to the effective date of the change or limitation.

4.3   Restrictions to Use of PHI. The RECEIVER shall notify Business Associate in writing no later than fifteen (15) days prior to the effective date of any restriction on the use or disclosure of PHI that Receiver has agreed to in accordance with 45 C.F.R. Section 164.522. Business Associate shall comply with the terms of such restriction.

4.4   RECEIVER Requests. The RECEIVER represents and warrants it shall not request Business Associate to use or disclose PHI in any manner that would not be permissible under the Privacy Rule if done by the RECEIVER. In the event the RECEIVER requests Business Associate to use or disclose PHI in any manner, and such use or disclosure results in a violation or alleged violation of HIPAA or this Agreement, the RECEIVER will hold harmless Business Associate from all liabilities, costs and damages arising out of or in any way connected with such use or disclosure, including reasonable attorney's fees.

4.5   RECEIVER Disclosures. The RECEIVER represents and warrants to Business Associate that the RECEIVER will not disclose any PHI to Business Associate unless the RECEIVER has obtained any consents and authorizations that may be required by law or otherwise necessary for such disclosure.

DocuSign Envelope ID: 1B077CEF-2863-4D90-913A-D57384D4C6EF

## SECTION V - TERM/TERMINATION

5.1     <u>Term</u>.  The term of this Agreement shall be effective as of the day and year first above written, and shall continue for as long as PHI is being exchanged by the RECEIVER and Business Associate.

5.2     <u>Termination for Cause</u>. Either party may terminate this Agreement and the Underlying Agreement for a material breach of this Agreement by the other party if such breach is not cured within thirty (30) days of receipt of written notice thereof.  If neither termination nor cure are feasible, the RECEIVER shall report the violation to the Secretary.

5.3     <u>Termination After Repeated Violations</u>.   Either party may terminate the Underlying Agreement if either party repeatedly violates this Agreement or any provision hereof, irrespective of whether, or how promptly, either party may remedy such violation after being notified of the same.

5.4     <u>Effect of Termination</u>. Upon termination of this Agreement, Business Associate shall destroy or return to the RECEIVER all PHI provided by the RECEIVER to the Business Associate or created or received by the Business Associate on behalf of the RECEIVER. If it is infeasible for Business Associate to return or destroy PHI upon termination of this Agreement, Business Associate will maintain the protection required under this Agreement of the PHI for the period of time required under applicable law, or in accordance with Business Associate's internal record retention schedule as in effect from time to time, at which time Business Associate shall destroy the PHI in accordance with acceptable business procedures.   This provision shall also apply to PHI in the possession of subcontractors or agents of the Business Associate, and Business Associate shall be fully responsible for such compliance.

5.5     <u>Survival</u>.  The rights and obligations of Business Associate under Section 5.4 of this Agreement shall survive the termination of this Agreement.

## SECTION VI - BREACH COST REIMBURSEMENT

6.1     <u>Breach Cost Reimbursement.</u> In the event of a Breach caused solely by Business Associate and the HIPAA Regulations require notice to individuals pursuant to 45 C.F.R. Sections 164.404 and 164.406, Business Associate agrees to reimburse the RECEIVER for the reasonable and substantiated costs related to the following: providing notifications to affected individuals, the media, or the Secretary, providing credit monitoring services to the affected individuals, if appropriate, for up to one (1) year, any fines and penalties assessed against the RECEIVER directly attributable to Business Associate's Breach, investigation costs, mitigation efforts required under the HIPAA Regulations, and attorney's fees incurred directly as a result of the Breach (but not in connection with any third-party claims).

DocuSign Envelope ID: 1B077CEF-2863-4D90-913A-D57384D4C6EF

## SECTION VII - MISCELLANEOUS

7.1    <u>Construction</u>.  This Agreement shall be construed as broadly as necessary to implement and comply with HIPAA and the HIPAA regulations.  The parties agree that any ambiguity in this Agreement shall be resolved in favor of a meaning that complies and is consistent with HIPAA and HIPAA regulations.  A reference in this Agreement to a section in the Privacy Rule means the section as in effect or as amended.  Any ambiguity in this Agreement shall be resolved to permit the Parties to comply with the Privacy Rule.

7.2    <u>Notice</u>.  All notices and other communications required or permitted pursuant to this Agreement shall be in writing, addressed to the party at the address set forth at the end of this Agreement, or to such other address as either party may designate in writing from time to time.  All notices and other communications shall be mailed by registered or certified mail, return receipt requested, postage pre-paid, or transmitted by hand delivery or telegram.  All notices shall be effective as of the date of delivery of personal notice or on the date of receipt, whichever is applicable.

7.3    <u>Modification of this Agreement</u>.  The parties recognize that this Agreement may need to be modified from time to time to ensure consistency with amendments to and changes in applicable federal and state laws and regulations, including, but not limited to, HIPAA. The parties agree to execute any additional amendments to this Agreement reasonably necessary for each party to comply with HIPAA, including any requirements related to a Chain of Trust Agreement between the parties pursuant to the HIPAA security standards. This Agreement shall not be waived or altered, in whole or in part, except in writing signed by the parties.

7.4    <u>Transferability</u>.  This Agreement may not be assigned by either party without the express written consent of the other.

7.5    <u>Governing Law and Venue</u>.  This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of Florida, without giving effect to its conflict of laws provisions.

7.6    <u>Binding Effect</u>.  This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective permitted successors and assigns.

7.7    <u>Execution</u>.  This Agreement may be executed in multiple counterparts, each of which shall constitute an original and all of which shall constitute but one Agreement.

7.8    <u>Gender and Number</u>.  The use of the masculine, feminine or neutral genders, and the use of the singular and plural, shall not be given an effect of any exclusion or limitation herein. The use of the word "person" or "party" shall mean and include any individual, trust, corporation, partnership or other entity.

Rev. 5/16                                     7

DocuSign Envelope ID: 1B077CEF-2863-4D90-913A-D57384D4C6EF

7.9    <u>Priority of Agreement</u>.  If any portion of this Agreement is inconsistent with the terms of the Underlying Agreement, the terms of this Agreement shall prevail.  Except as set forth above, the remaining provisions of the Underlying Agreement are ratified in their entirety.

7.10   <u>Entire Agreement.</u>  This Agreement constitutes the entire Agreement between the parties concerning the subject herein, and supersedes all prior oral or written agreements between the parties on same.

7.11   <u>Beneficiaries.</u>  The parties agree that there shall be no incidental or intended third-party beneficiaries under this Agreement, nor shall any other person on entity have rights arising from the same.

IN WITNESS WHEREOF, the parties have hereunto set their hands effective the day and year first above written.

DocuSign Envelope ID: 1B077CEF-2863-4D90-913A-D57384D4C6EF

**The RECEIVER**

Signature: _____ _____

Name: Mary Linzee Branham

Title: Asst. Division Director

Date: June 1, 2016

Address: 2020 Capital Circle, SE
         Alexander Building, 3rd Floor
         Tallahassee, FL  32301

**BUSINESS ASSOCIATE**

Signature: ~~Walter Lista~~

Name: _____

Title: Executive Vice President

Date: 6/2/2016

Address: 5000 SW 75 Ave

         Miami, Fl 33155

         _____

**The RECEIVER**

Signature: _____

Name: Mary Linzee Branham

Title:  Asst. Division Director

Date:    June 1, 2016

Address: 2020 Capital Circle, SE
        Alexander Building, 3rd Floor
        Tallahassee, FL  32301

**BUSINESS ASSOCIATE**

Signature: _____

Name: _____

Title: _____

Date: _____

Address: _____

        _____

        _____

DocuSign Envelope ID: C33940CE-01F3-4324-AF25-06CC57A2C4B9

## BUSINESS ASSOCIATE AGREEMENT

THIS BUSINESS ASSOCIATE AGREEMENT (the "Agreement") is entered into by and between the Florida Department of Financial Services, Division of Rehabilitation and Liquidation (the "RECEIVER"), as the RECEIVER of **Florida Healthcare Plus, Inc.**, pursuant to the court Order entered in Leon County, Florida Circuit Court Case No.: 2014-CA-2762, and **MSPA Claims 1, LLC** ("Business Associate"), effective the 1st day of June, 2016. This Agreement shall be incorporated into and made part of the Underlying Agreement (defined below).

## RECITALS

WHEREAS, the RECEIVER and Business Associate are parties to an agreement (the "Underlying Agreement") pursuant to which Business Associate provides certain services to the RECEIVER and, in connection with those services, the RECEIVER discloses to Business Associate certain protected health information ("PHI") that is subject to protection under the Health Insurance Portability and Accountability Act of 1996, as amended from time to time ("HIPAA"); and

WHEREAS, the Parties wish to set forth their understandings with regard to the use and disclosure of Protected Health Information ("PHI") by Business Associate in performance of its obligations in compliance with (1) the Privacy and Security Regulations; and (2) Subtitle D of the Health Information Technology for Economic and Clinical Health Act, Title XIII of Public Law 111-005 (42 U.S.C.A. Section 17921 et seq., subchapter III, Privacy).

NOW THEREFORE, for and in consideration of the recitals above and the mutual covenants and conditions herein contained, the RECEIVER and Business Associate enter into this Agreement to provide a full statement of their respective responsibilities.

## SECTION I - DEFINITIONS

1.1    Definitions.  Capitalized terms shall have the meanings given to them in the Privacy and Security Regulations and HITECH, which are incorporated herein by reference.

## SECTION II – OBLIGATIONS AND ACTIVITIES OF BUSINESS ASSOCIATE

2.1    Performance of Agreement.  Business Associate, its agents and employees (collectively referred to as "Business Associate") agrees to not use or further disclose PHI other than as permitted or required by this Agreement, the Underlying Agreement, or as Required by Law.

2.2    Safeguards for Protection of PHI.  Business Associate agrees to use reasonable safeguards to prevent use or disclosure of the PHI other than as provided for by this Agreement. Business Associate agrees to cooperate with the RECEIVER's efforts to mitigate, to the extent practicable, any harmful effects that arise from a use or disclosure of PHI by

Rev. 5/16

DocuSign Envelope ID: C33940CE-01F3-4324-AF25-06CC57A2C4B9

Business Associate in violation of the requirements of this Agreement in accordance with 45 C.F.R. Section 164.514(d).

2.3    Electronic Health Information Security and Integrity.  Business Associate shall develop, implement, maintain and use appropriate administrative, technical and physical security measures consistent with and in compliance with the Security Regulations and HITECH to preserve the integrity, confidentiality and availability of all electronic PHI that it creates, receives, maintains or transmits on behalf of the RECEIVER.  Business Associate shall document and keep these security measures current in accordance with the Security Regulations and HITECH (including 42 U.S.C.A. Section 17931).

2.4    Protection of Exchanged Information in Electronic Transactions.  If Business Associate conducts any Standard Transaction for or on behalf of the RECEIVER, Business Associate shall comply, and shall require any subcontractor or agent conducting such Standard Transaction to comply, where applicable.

2.5    Reporting.  As described below, Business Associate shall report to the RECEIVER in writing (a) any use or disclosure of PHI not permitted under 45 C.F.R. Section 164, Subpart E, this Agreement, or by law, (b) any Security Incident (as defined below) of which it becomes aware and (c) any Breach of Unsecured PHI in accordance with HITECH, including 42 U.S.C.A. Section 17932; provided, however, that the Parties acknowledge and agree that this Section constitutes written notice by Business Associate to the RECEIVER of the ongoing existence and occurrence of attempted but Unsuccessful Security Incidents (as defined below).  "Unsuccessful Security Incidents" will include, but not be limited to, pings and other broadcast attacks on Business Associate's firewall, port scans, unsuccessful log-on attempts, denials of service and any combination of the above, so long as no such incident results in unauthorized access, use or disclosure of PHI.  For purposes of this Agreement, the term "Security Incident" means the successful unauthorized access, use, disclosure, modification or destruction of electronic PHI.

(a)    Reporting Security Incidents or Improper Uses or Disclosures.  Business Associate shall make the report to the RECEIVER within three (3) business days after Business Associate learns of such unauthorized use or disclosure or Security Incident.  In accordance with 45 C.F.R. Section 164.404, any unauthorized use or disclosure of PHI that is a Breach of Unsecured PHI shall be reported as required under subsection (b) below.

(b)    Notification of a Breach.  Pursuant to 45 C.F.R. Section 164.410, Business Associate shall provide written notice to the RECEIVER of any Breach of Unsecured PHI within three business days after Business Associate discovers the Breach.  Business Associate's report to the RECEIVER shall identify or describe: (i) the affected Individual whose Unsecured PHI has been or is reasonably believed to have been accessed, acquired or disclosed, if known; (ii) the incident, including the date of the Breach and the date of the discovery of the Breach, if known; (iii) the types of Unsecured PHI involved in the Breach; (iv) any specific steps the Individual should take to protect him or herself from potential harm related to the

DocuSign Envelope ID: C33940CE-01F3-4324-AF25-06CC57A2C4B9

Breach; (v) what the Business Associate is doing to investigate the Breach, to mitigate losses and to protect against further Breaches; (vi) contact procedures for how the Individual can obtain further information from the Business Associate; and (vii) such other information as required by 45 C.F.R. Section 164.404(c).

2.6    <u>Use of Subcontractors</u>.  Business Associate shall require each of its subcontractors or agents to whom Business Associate may provide PHI on behalf of the RECEIVER to agree to written contractual provisions that impose at least the same obligations to protect such PHI as are imposed on Business Associate by this Agreement, the Privacy and Security Regulations and HITECH.

2.7    <u>Access to PHI</u>.  To the extent Business Associate possesses PHI in a Designated Record Set, Business Associate shall provide access, at the written request of the RECEIVER, to PHI in a Designated Record Set, to the RECEIVER to meet the requirements under Title 45, Section 164.524 of the C.F.R. or applicable state law and to meet the electronic transmission requirements for access to Electronic Health Records by Individuals in accordance with HITECH, including 42 U.S.C.A. Section 17935(e).

2.8    <u>Amendments to PHI</u>.  To the extent Business Associate possesses PHI in a Designated Record Set, Business Associate agrees to make any amendments to PHI in a Designated Record Set that the RECEIVER directs or agrees to pursuant to 45 C.F.R. Section 164.526 at the request of the RECEIVER in the time and manner mutually agreed upon by the Parties.

2.9    <u>Allowing the RECEIVER to Monitor Compliance</u>. Business Associate will make its internal practices, books and records relating to the use and disclosure of PHI received from, or created or received by Business Associate on behalf of, the RECEIVER available to the Secretary for purposes of the Secretary determining the RECEIVER's compliance with the Privacy Rule and the Security Rule. Upon reasonable notice and prior written request, Business Associate agrees to make available to the RECEIVER during normal business hours, at Business Associate's place of business, such practices, books and records for the purpose of assessing Business Associate's compliance with the Privacy Rule or Security Rule; provided however, that such request does not compromise other proprietary or confidential information of Business Associate or its other customers and is subject to attorney-client and other applicable legal privileges.

2.10    <u>Mitigation</u>.  Business Associate agrees to mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of PHI by Business Associate in violation of the requirements of this Agreement.

2.11    <u>Marketing</u>.  Business Associate shall not receive direct or indirect payment for marketing communications which include PHI without authorization from the RECEIVER or the affected Individuals unless such communication is permitted under the Privacy Regulations and HITECH, including 42 U.S.C.A. Section 17936.

Rev. 5/16                          3

DocuSign Envelope ID: C33940CE-01F3-4324-AF25-06CC57A2C4B9

2.12  <u>Sale of PHI.</u>  Business Associate shall not receive direct or indirect payment in exchange for any PHI including Electronic Health Records, unless Business Associate receives authorization from the RECEIVER or by all affected Individuals, except as permitted under HITECH including 42 U.S.C.A. Section 17935(d).

## SECTION III – PERMITTED USES AND DISCLOSURES BY BUSINESS ASSOCIATE

3.1  <u>General.</u>  Except as otherwise limited in this Agreement, Business Associate may use or disclose PHI to perform functions, activities, or services for, or on behalf of, the RECEIVER as specified in the Underlying Agreement, provided that such use or disclosure would not violate the Privacy Rule if done by the RECEIVER.

3.2  <u>Specific.</u>  Except as otherwise limited in this Agreement, Business Associate may use or disclose PHI for the proper management and administration of the Business Associate, provided that such disclosures are Required by Law, or are permitted by law provided that Business Associate obtains reasonable assurances from the person to whom the information is disclosed that it will remain confidential and will be used or further disclosed only as required by law or for the purpose for which it was disclosed to the person, and that the person will notify the Business Associate of any instances of which it is aware in which the confidentiality of the information has been breached. Additionally, except as limited in this Agreement, Business Associate may use PHI to provide Data Aggregation Services to Receiver (to the extent detailed in the Underlying Agreement) as permitted by 45 C.F.R. Section 164.504(e)(2)(i)(B). Business Associate may also de-identify PHI in accordance with the standards set forth in 45 C.F.R. Section 164.514(b) and may use or disclose such de-identified data unless prohibited by applicable law.

3.3  <u>Access to PHI.</u>  Business Associate shall refer to the RECEIVER all requests by Individuals for information about, or accounting of, disclosures of PHI in accordance with 45 C.F.R. Section 164.524 and Section 2.7.

3.4  <u>Documentation of Disclosures.</u> Business Associate agrees to document disclosures of PHI, other than for treatment, payment or healthcare operations or disclosures that are incidental to another permissible disclosure, and information related to such disclosures to the extent required for the RECEIVER to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 C.F.R. Section 164.528.

3.5  <u>Accounting of Disclosures.</u>  Business Associate agrees to provide to the RECEIVER, in a reasonable time and manner, but not later than ten (10) business days of the RECEIVER's written request, information collected in accordance with Section 3.4 of this Agreement, to the extent required to permit the RECEIVER to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 C.F.R. Section 164.528. Business Associate shall document all disclosures of PHI and information related to such disclosures as would be required for the RECEIVER to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with Title 45,

DocuSign Envelope ID: C33940CE-01F3-4324-AF25-06CC57A2C4B9

Section 164.528 of the C.F.R., including PHI in Electronic Health Records in accordance with HITECH. Business Associate agrees to provide the RECEIVER, information collected in accordance with this paragraph, to permit the RECEIVER to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with Title 45, Section 164.528 of the C.F.R. and HITECH, including 42 U.S.C.A. Section 17935(c) with respect to Electronic Health Records. To the extent a request for an accounting relates to disclosures of PHI in Electronic Health Records by Business Associate, Business Associate shall provide the accounting directly to the RECEIVER upon request.

3.6     Violations of Law. Business Associate may use PHI to report violations of law to appropriate Federal and State authorities, consistent with 45 C.F.R. Section 164.502(j)(1).

## SECTION IV – OBLIGATIONS OF RECEIVER

4.1     Notice of Privacy Practices. The RECEIVER shall provide Business Associate with the notice of privacy practices that [company name], has produced in accordance with 45 C.F.R. Section 164.520, as well as any changes to such notice that may affect Business Associate's use or disclosure of PHI no later than fifteen (15) days prior to the effective date of the change or limitation.

4.2     Changes in Use of PHI. The RECEIVER shall provide Business Associate with any changes in, or revocation of, permission by Individual to use or disclose PHI, if such changes affect Business Associate's permitted or required uses and disclosures. Business Associate shall have a reasonable period of time to act on such notice but shall be provided written notice no later than fifteen (15) days prior to the effective date of the change or limitation.

4.3     Restrictions to Use of PHI. The RECEIVER shall notify Business Associate in writing no later than fifteen (15) days prior to the effective date of any restriction on the use or disclosure of PHI that Receiver has agreed to in accordance with 45 C.F.R. Section 164.522. Business Associate shall comply with the terms of such restriction.

4.4     RECEIVER Requests. The RECEIVER represents and warrants it shall not request Business Associate to use or disclose PHI in any manner that would not be permissible under the Privacy Rule if done by the RECEIVER. In the event the RECEIVER requests Business Associate to use or disclose PHI in any manner, and such use or disclosure results in a violation or alleged violation of HIPAA or this Agreement, the RECEIVER will hold harmless Business Associate from all liabilities, costs and damages arising out of or in any way connected with such use or disclosure, including reasonable attorney's fees.

4.5     RECEIVER Disclosures. The RECEIVER represents and warrants to Business Associate that the RECEIVER will not disclose any PHI to Business Associate unless the RECEIVER has obtained any consents and authorizations that may be required by law or otherwise necessary for such disclosure.

DocuSign Envelope ID: C33940CE-01F3-4324-AF25-06CC57A2C4B9

## SECTION V - TERM/TERMINATION

5.1    <u>Term</u>.  The term of this Agreement shall be effective as of the day and year first above written, and shall continue for as long as PHI is being exchanged by the RECEIVER and Business Associate.

5.2    <u>Termination for Cause</u>. Either party may terminate this Agreement and the Underlying Agreement for a material breach of this Agreement by the other party if such breach is not cured within thirty (30) days of receipt of written notice thereof.  If neither termination nor cure are feasible, the RECEIVER shall report the violation to the Secretary.

5.3    <u>Termination After Repeated Violations</u>.   Either party may terminate the Underlying Agreement if either party repeatedly violates this Agreement or any provision hereof, irrespective of whether, or how promptly, either party may remedy such violation after being notified of the same.

5.4    <u>Effect of Termination</u>. Upon termination of this Agreement, Business Associate shall destroy or return to the RECEIVER all PHI provided by the RECEIVER to the Business Associate or created or received by the Business Associate on behalf of the RECEIVER. If it is infeasible for Business Associate to return or destroy PHI upon termination of this Agreement, Business Associate will maintain the protection required under this Agreement of the PHI for the period of time required under applicable law, or in accordance with Business Associate's internal record retention schedule as in effect from time to time, at which time Business Associate shall destroy the PHI in accordance with acceptable business procedures.   This provision shall also apply to PHI in the possession of subcontractors or agents of the Business Associate, and Business Associate shall be fully responsible for such compliance.

5.5    <u>Survival</u>.  The rights and obligations of Business Associate under Section 5.4 of this Agreement shall survive the termination of this Agreement.

## SECTION VI - BREACH COST REIMBURSEMENT

6.1    <u>Breach Cost Reimbursement.</u> In the event of a Breach caused solely by Business Associate and the HIPAA Regulations require notice to individuals pursuant to 45 C.F.R. Sections 164.404 and 164.406, Business Associate agrees to reimburse the RECEIVER for the reasonable and substantiated costs related to the following: providing notifications to affected individuals, the media, or the Secretary, providing credit monitoring services to the affected individuals, if appropriate, for up to one (1) year, any fines and penalties assessed against the RECEIVER directly attributable to Business Associate's Breach, investigation costs, mitigation efforts required under the HIPAA Regulations, and attorney's fees incurred directly as a result of the Breach (but not in connection with any third-party claims).

DocuSign Envelope ID: C33940CE-01F3-4324-AF25-06CC57A2C4B9

## SECTION VII - MISCELLANEOUS

7.1   <u>Construction</u>.  This Agreement shall be construed as broadly as necessary to implement and comply with HIPAA and the HIPAA regulations.  The parties agree that any ambiguity in this Agreement shall be resolved in favor of a meaning that complies and is consistent with HIPAA and HIPAA regulations.  A reference in this Agreement to a section in the Privacy Rule means the section as in effect or as amended.  Any ambiguity in this Agreement shall be resolved to permit the Parties to comply with the Privacy Rule.

7.2   <u>Notice</u>.  All notices and other communications required or permitted pursuant to this Agreement shall be in writing, addressed to the party at the address set forth at the end of this Agreement, or to such other address as either party may designate in writing from time to time.  All notices and other communications shall be mailed by registered or certified mail, return receipt requested, postage pre-paid, or transmitted by hand delivery or telegram.  All notices shall be effective as of the date of delivery of personal notice or on the date of receipt, whichever is applicable.

7.3   <u>Modification of this Agreement</u>.  The parties recognize that this Agreement may need to be modified from time to time to ensure consistency with amendments to and changes in applicable federal and state laws and regulations, including, but not limited to, HIPAA.  The parties agree to execute any additional amendments to this Agreement reasonably necessary for each party to comply with HIPAA, including any requirements related to a Chain of Trust Agreement between the parties pursuant to the HIPAA security standards.  This Agreement shall not be waived or altered, in whole or in part, except in writing signed by the parties.

7.4   <u>Transferability</u>.  This Agreement may not be assigned by either party without the express written consent of the other.

7.5   <u>Governing Law and Venue</u>.  This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of Florida, without giving effect to its conflict of laws provisions.

7.6   <u>Binding Effect</u>.  This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective permitted successors and assigns.

7.7   <u>Execution</u>.  This Agreement may be executed in multiple counterparts, each of which shall constitute an original and all of which shall constitute but one Agreement.

7.8   <u>Gender and Number</u>.  The use of the masculine, feminine or neutral genders, and the use of the singular and plural, shall not be given an effect of any exclusion or limitation herein.  The use of the word "person" or "party" shall mean and include any individual, trust, corporation, partnership or other entity.

DocuSign Envelope ID: C33940CE-01F3-4324-AF25-06CC57A2C4B9

7.9    <u>Priority of Agreement</u>.  If any portion of this Agreement is inconsistent with the terms of the Underlying Agreement, the terms of this Agreement shall prevail.  Except as set forth above, the remaining provisions of the Underlying Agreement are ratified in their entirety.

7.10    <u>Entire Agreement.</u>  This Agreement constitutes the entire Agreement between the parties concerning the subject herein, and supersedes all prior oral or written agreements between the parties on same.

7.11    <u>Beneficiaries.</u> The parties agree that there shall be no incidental or intended third-party beneficiaries under this Agreement, nor shall any other person on entity have rights arising from the same.

IN WITNESS WHEREOF, the parties have hereunto set their hands effective the day and year first above written.

```
[signature page follows]
```

DocuSign Envelope ID: C33940CE-01F3-4324-AF25-06CC57A2C4B9

**The RECEIVER**
Signature:_____
Name: <u>Mary Linzee Branham</u>
Title: <u>Asst. Division Director</u>
Date: <u>June 1, 2016</u>

Address: <u>2020 Capital Circle, SE</u>
    <u>Alexander Building, 3rd Floor</u>
    <u>Tallahassee, FL  32301</u>

**BUSINESS ASSOCIATE**
Signature:_____
       _DocuSigned by:_
       _Walter Lista_
       AA9C883CD387438...
Name: Walter Lista
Title: Executive Vice President
Date: 6/1/2016

Address: 5000 SW 75 Ave Suite 400

    Miami, Fl. 33155

    .

**The RECEIVER**

Signature: _____

Name: Mary Linzee Branham

Title:  Asst. Division Director

Date:   June 1, 2016 _____

Address: 2020 Capital Circle, SE ____
         Alexander Building, 3rd Floor
         Tallahassee, FL  32301 _____

**BUSINESS ASSOCIATE**

Signature:_____

Name: _____

Title:  _____

Date:  _____

Address: _____
          _____
          _____

Exhibit "C"

**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA**

In Re: The Receivership of

                                     Case No.: 2014 CA 2762

FLORIDA HEALTHCARE PLUS, INC.

_____/

**ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN RECEIVER AND LA
LEY RECOVERY SYSTEMS, INC.**

       **THIS CAUSE** was considered on the *Receiver's Motion for Order Approving Settlement*

*Agreement Between Receiver and La Ley Recovery Systems, Inc.* After review of the Motion, the

Settlement Agreement, and being otherwise fully advised in all material premises, it is hereby

**ORDERED and ADJUDGED as follows**:

       1.     Subject to this Court's approval, and based upon the rationale set forth in the

agreement, including the Receiver's audit of La Ley's system and methodologies, the Receiver

has entered into a Settlement Agreement with La Ley Recovery Systems, Inc. to settle the

dispute raised by the Receiver's *Petition to Enjoin La Ley Recovery Systems Inc., Its Affiliates,*

*Assignees, Representatives, Agents, Subcontractors, and All Other Entities From Further*

*Collection Activities on Behalf Of Florida Healthcare Plus, Inc.*

       2.     The Court finds that the Settlement Agreement was negotiated in good faith and

is in the best interest of the estate of Florida Healthcare Plus, Inc.

       3.     The *Receiver's Motion for Order Approving Settlement Agreement Between*

*Receiver and La Ley Recovery Systems, Inc.* is hereby GRANTED.

       4.     The Court retains jurisdiction to enforce the terms of the Settlement Agreement.

**DONE AND ORDERED** in Chambers at Leon County Courthouse, Tallahassee, Florida, on this the _14_ of June 2016.

_____
GEORGE S. REYNOLDS, III
CIRCUIT JUDGE

**Copies furnished to**:
Jamila G. Gooden, Esq., at jamila.gooden@myfloridacfo.com
Yamile Benitez-Torviso, Esq. at yamile.benitez-torviso@myfloridacfo.com
E. Barclay Cale, Esq. at bcale@calelaw.com
James A. Mckee, JMcKee@foley.com
John H. Ruiz, Esq., serve@lawofficeslaley.com
Gustavo J. Losa, glosa@lawofficeslaley.com

Exhibit "D"

**Direct General Insurance Company**
Claims Account
1281 Murfreesboro Road
Nashville, TN 37217

First Tennessee Bank
Greeneville, Tennessee
87-434/642

Check Number   361599
Check Date   02/11/2016

VOID   VOID

Pay    Ten Thousand Two Hundred Sixty Two and *** 25/100 Dlrs ***********************    $   10,262.25

Void After 180 Days

To The
Order
Of
MSPA Claims 1, LLC

VOID

Claim NO.: 1301752987        Policy: FLAD490051940        Loss Date: 2013-04-01        AUTHORIZED SIGNATURE

⑈361599⑈ ⑆064204347⑇18787433 8⑈

---

Payee:
MSPA Claims 1, LLC

Check Number   361599
Check Date   02/11/2016
Check Amount   $   10,262.25

Remarks:
1 of 1 304789 clkaf PIP; 040113-060614; Claim 13-01752
987

Claim Number   1301752987
Policy Number   FLAD490051940
Loss Date   2013-04-01
Claimant   Barbara Allen
Coverage   PID
Tax ID Number   473103017 hold

Mail To:
MSPA Claims 1, LLC
5000 SW 75th Ave Ste 400
Miami, FL 33155

---

**Direct General Insurance Company**
Claims Account
1281 Murfreesboro Road
Nashville, TN 37217

First Tennessee Bank
Greeneville, Tennessee
87-434/642

Check Number   **361599**
Check Date   02/11/2016

Pay    Ten Thousand Two Hundred Sixty Two and *** 25/100 Dlrs ***********************

To The
Order
Of
MSPA Claims 1, LLC

NON-NEGOTIABLE

Claim NO.: 1301752987        Policy: FLAD490051940        Loss Date: 2013-04-01

NON-NEGOTIABLE

REORDER 901 - U.S. PATENT NO. 5038290, 5575505, 5841183, 5785353, 5064364, 6030000